Parker, J.
The plaintiff would insist that a factor, under the circumstances of this case, had no authority to trust the purchaser: and that having so done, he became immediately chargeable to the principal for the price. But the law merchant clearly contradicts this principle, it being well settled that a factor may sell upon credit, without taking upon himself the debt; unless he is restricted from so doing by the orders of his principal. And this principle is reasonable, and for the benefit of those who send their goods to market; for otherwise they would be frequently sold at a sacrifice, or remain unsold at the expense of the owner.
But even if this were not settled law, it is very clear that the usage of the market, where the goods are sold, would bind the owner; for he is presumed to be conusant of that * usage; and if he is silent in his directions to his factor, [ * 39 ] as to the terms of the sale, he is considered as intending to be governed by the usage. Then if the factor had authority in this case to sell on credit, at the risk of his principal, there being no complaint of negligence, carelessness, or want of skill in making his bargain, either of which might have made him liable to the owner, notwithstanding his general authority; the question arises, whether the mode, in which the defendant gave the credit in this case, has fixed the debt upon him. A promissory negotiable note, payable to himself, was taken; and this is the point upon which the judge, at the trial, thought the liability of the defend *34 ant rested. But I do not see why this should change the nature of the case.
The relation between the principal and factor remains the same, as if the factor had taken a note not negotiable; or had charged the article sold in his book, and had made the purchaser debtor to himself; which he certainly might have done, keeping an account at the same time between himself and the principal. That the note was negotiable, was favorable to the principal, because it could easily be assigned by the factor to him. It is considered by the law as taken in trust for the principal; and if the factor should refuse to assign it on demand, doubtless he would be liable in an action by the principal.
It is said that a negotiable note, given for the amount of an account for goods sold, discharges the original contract. This is true, as settled in this commonwealth, between the vendor and vendee; but it surely does not follow, that because the factor has changed an account on his book into the more simple and convenient evidence of debt, a note of hand, that for this cause only, he has burdened himself with a debt for which he received no consideration.
I am, therefore, of opinion that there ought to be a new trial.
Sewall, J.
If I was satisfied that, upon established principles, a factor who sells the goods of his principal upon [ * 40 ] * credit, and receives a promissory note for the amount of the sales, payable to himself and negotiable, became thereby immediately accountable, as if he had sold for money, I should think a new trial ought not to be granted. But I am not satisfied that this is the law. I think the rule in this respect must depend upon the particular usages of commission merchants, and that the law upon this subject, as to the authority of the factor, and the extent of his liability, is referable to known and established usages; where the parties rely altogether upon the general relation and implied duty of a merchant and factor, no directions or agreement having been expressed between them, or proved in the case.
I think usage is competent evidence, in a case of this nature, to show the implied intentions and understanding of the parties. As evidence to the effect of proving a usage of selling upon credit, and of taking negotiable promissory notes, payable to the commission merchant, was offered in this case and rejected at the trial, I think there ought to be a new trial; • leaving it for the present undeter mined how far the usage will justify the conduct of the defendant in the case at bar.
It is very certain that no usage can justify the defendant in any *35 wilful negligence in securing the property of his principal. And if his conduct has been such as to show that he had received and treated the note, given for the gin, as his own demand, he may be liable; notwithstanding a usage to sell upon credit, and to take notes in payment, should be fully proved.
Sedgwick, J.
The question is, whether a promissory negotiable note, taken by a commission merchant, payable to himself, in payment for goods sold for his principal, at the time of the sale, the custom of the place authorizing a sale upon credit, without express authority from the principal, is at the risk of the principal or of the factor.
I have no doubt that the evidence of selling upon credit, where no particular instructions were given, was properly * admitted. But evidence offered to prove that, in cases [ * 41 ] where credit was given by a factor, it was customary to take promissory negotiable notes, payable to the factor, was rejected, because it was deemed inadmissible. Perhaps it might be proper that a unanimous opposing opinion of all the other members of the Court should induce such a modest diffidence of my own judgment, as would lead me silently to acquiesce. But of the opinion which I delivered at the trial I had then very little doubt; and I confess that neither my own reflections, nor what I hav-e heard since, have entirely altered the view which I then had of the subject Under these circumstances it is my duty to declare, and 1 shall do it as concisely as possible, the reasons on which my opinion was founded.
We know that a promissory note, given and received for goods at the time of a sale of them, is payment as much and as effectual, to all intents and purposes, as cash. Now in this case, at the time of the sale, the defendant took a promissory note in his own name ; and of consequence then received payment, as much so as if he nod received cash. He did not leave it in the power of the plaintiff to resort to Chapin, the vendee, but he was compelled to look only to the defendant. The note which was thus taken, and which gave evidence of a contract between the defendant and Chapin, to the exclusion of the plaintiff, was negotiable, or, in other words, the very form, as well as nature of it, was currency; as much circulating medium as a bank note; of such nature, that a previously existing parole contract, as the law is here understood, would have been merged by it, as completely as it would have been by a bond, recognizance, or deed of any kind. Now, can it be believed that if the defendant had taken a bond, or other deed, in payment for the goods sold, the sufficiency of the debtor would have been at the risk of the plaintiff? No more, in my opinion, than if the defendant had taken *36 a conveyance of real estate in payment. It seems to me, [ * 42 ] that in such a case the factor * must be considered as assuming the risk of the responsibility of the vendee.
It is in general undoubtedly true, where a factor sells the goods of his principal on credit, that on non-payment, according to the contract, an action may be supported against the vendee in the name of the principal. The principal has, in such case, a double security, the fidelity of the factor and the sufficiency of the debtor. But if he is deprived of the latter, the sufficiency of the debtor, by the act of the factor, as in this case, by taking a promissory note in payment, it seems to me reasonable that he should have direct recourse to his factor.
It is said, that the factor is bound to permit, in such a case as this, the principal to make use of his name in commencing an action upon the note. But suppose he will not; the principal is then deprived of any remedy against the debtor; which, instead of being an absolute right in the principal, and available at his pleasure, is made to depend on the will of the factor. The factor may also assign the note, or he may die, become insolvent, or a bankrupt, and thereby the remedy, which ought to exist against the debtor, for the security of the principal, be wholly lost.
The principle contended for, in the defence of this action, is not supported by any rule of commercial law laid down, or even suggested, by any approved authority. It is attempted only to be sup ported by the custom of commission merchants in Boston. For my self, I am not disposed to authorize any description of merchants to alter the known principles of law, in cases materially affecting the important interests of others, as this would do, by depriving principals of the means of looking immediately to their debtors, made such by their contracts with factors. It is not like the custom of notice, established by the banks in this state, and which has been approved by the Court, of demanding the money due upon negotiated notes of the makers, when they fall due, according to the terms of them, without an allowance for the days of grace, and [ * 43 ] afterwards, at the end * of those days, giving notice to the endorsers. This is undoubtedly an alteration of what was previously the law, in respect to notice; but it is an alteration only of the manner and form, and does not affect, as this supposed custom does, the substance, by depriving the principal of an immediate remedy against a debtor who justly owes him.
I know that it may be said, in this case, that as Chapin became a bankrupt before the note became due, and as he had no estate from which a dividend could be made, it is impossible that the plaintiff should be a loser. But to this it may be answered, that in establisb *37 ing general principles, care should be taken to look at their conse quences in all respects; and aP'mugh there may be cases, in which no injury would result, yet if certain mischiefs could, in other cases, be foreseen, an approbation ought to be withheld. But there is no certainty that there may not, even in this case, have been a loss to the plaintiff; for if, by being the creditor of Chapin, he might have taken an active part in the proceedings against him under the commission of bankruptcy, it cannot with certainty be known but that property enough might have been found to satisfy, in whole or in part, the debts of Chapin„ At any rate, it was a chance, of which the conduct of the defendant has unduly deprived him. But however this may be, yet in the cases which have been mentioned, of an assignment of the note by the factor, of his insolvency or bank ruptcy, the principal will be liable for losses, which might be avoid ed by the rule which I have always supposed governed such cases.
But even if the custom, on which the defendant relied, could in any case be supported, it seems to me to be necessary for that purpose, that it should have been made known to the plaintiff. This is not pretended to be the case. The defendant was authorized, by implication, to sell on credit; but in this case, as respected the plaintiff, he did not sell on credit; for the note that was given was payment; on which, and which alone, could an action be supported for the value of the goods. A note too, which, to * many purposes, and to all which have any relation to [ * 44 ] the case before us, has the properties of money; over which the defendant had absolute control, and over which the plain tiff had none
I am much opposed to innovations, by the establishment of new rules, affecting the rights of property. They are generally intended to conform to an existing state of things, or the equity of a particular case; but there has hardly been an instance, in which they have not been productive of mischief. Until now I have never heard it suggested that any such custom, as that offered to be proved, exist ed any where; but surely it ought not to conclude the plaintiff, without being made known to him. As I thus continue of the opinion I held at the trial, and as the verdict of the jury was conformed to that opinion, I am not for sending the cause to a new trial.
Parsons, C. J.,
stated the nature of the action, and the substance of the judge’s report, and proceeded:—Without considering how far the evidence comports with the declaration, which point is not oefore us on the report, I shall confine my opinion to the direction of the judge.
The Court will take notice, as a part of the law merchant, that a factor may sell goods at a reasonable credit, at the risk of his prin *38 cipal, when he is not restrained by his instructions, nor by the usage of the trade. He is not, however, authorized to give credit to any but persons in good credit, and whom prudent people would trust with their own goods. If, through carelessness, want of reasonable inquiry, he sell on credit to a man not in good credit, and there lie a loss, the factor must bear it.
When a factor sells on credit, he may take from the purchase t some instrument, by which the purchase may appear, with the price and the time of payment, and on which the purchaser may be charged in an action at law. And it is very clear that he is not obliged to disclose to the purchaser the name of his principal, or even to state to him that he sells as factor. Upon these [ * 45 ] principles he may take a * promissory note payable to himself; and when the principal lives in a foreign country, it may be most convenient for him to have the security payable to himself, so that he may sue it in his own name.
When the security is in the name of the factor, he holds it in trust for his principal. If the principal demand it, offering to pay the commission, and the factor refuse to assign it, he then becomes answerable for the money. So if the money be lost by his negligence, in not seasonably demanding it, the factor is responsible for his negligence. Upon these principles it seems very clear, that in this case, if the defendant had taken a note to himself not negoti able, to secure the payment of the money, he would have been a trustee of such note for the plaintiff; and if the money could not be recovered, without any loches on the part of the defendant, he would, in law, be discharged.
But, in this case, the defendant took as security a negotiable note in his own name. And it is said that such note is payment, by which the purchaser is discharged from the principal; and, consequently, that the defendant assumed the debt on himself, and is at all events answerable.
It must be admitted that in this state it has been settled by a series of decisions, which can be traced back sixty years, that where a negotiable note is given to secure the payment of money due by a simple contract, the simple contract is holden to be satisfied, or, merged in the note; lest the debtor, on the simple contract, should be holden to pay it to the creditor, and afterwards, as promisor of the note, be holden to pay its contents to an innocent endorsee. But the discharge of the debt, due by the simple contract, is the consideration for the negotiable note, (a)
*39 When a factor shall receive a negotiable note, in payment for goods sold on commission, as the consideration arises from the sale of his principal’s goods, the note may be holden in trust for the principal. But if it be so holden in trust, and the principal demand the note, offering to pay the commission, and the factor refuse to assign it, without * a right of recurring to him- [ * 46 ] self, this is a breach of his trust which will make him answerable. He is also answerable if he negotiate the note for his own use, or if the money be lost by his neglect of demanding it of the parties to the note.
Although a negotiable note may change the remedy against the purchaser on credit, if he fail to pay, yet the relation between the principal and factor may not be affected. If the law, or the usage, were not so, the disadvantages to the principal would be great. No factor would ever take a negotiable note, as security in his own name, unless for an extra commission as guarantying the payment.
By taking such a negotiable note, the principal is not obliged to wait for his money until due; but the factor may immediately discount the note and receive the money. But when the principal lives abroad, such discount is impracticable, unless by sending the note and having it returned endorsed by him. Another great benefit of a negotiable note, in the name of the factor, is, that he may, on the credit of it, make advances to his principal, which is often desired before the money is due. And the advances are easily procured by the factor’s discounting the note. But if the note is in the name of the principal, the factor cannot, on the credit of it, make any advances to his principal.
For these reasons I am satisfied that the principle holden by our courts, that a negotiable note is a bar to an action on the simple contract, which is the consideration of the note, does not necessa rily and absolutely affect the relation between a factor and his principal, as to the authority of the former to take a negotiable note, m his own name, in trust for the latter.
Whether, in deciding this point, we can judicially take notice of the usage in Boston, to which place the plaintiff sent his goods to be sold on commission, may be questioned. But a general usage in any place, by which sales on commission are regulated, may be *40 given in evidence. For it is a reasonable and legal pre- [ * 47 ] sumption, that every man * knows the usage of the place in which he traffics, whether by himself or his factor, and if the usage be not illegal, he is bound by it. If, then, it be the well-known and uniform usage in Boston for the factor to take negotiable notes, in his own name, as a security for the payment for the goods of his principal sold on credit, but in trust for his principal, such usage must bind the principal, unless he give his factor instructions repugnant to it, and such usage may be proved to a jury. Now, I am satisfied that such is the usage in Boston, and believe in every commercial city in the United States, where goods are sold by factors on commission.
In applying these observations to the case before us, there seems to be no imputation in the report, whatever may appear to be the case on another trial, of loches in the defendant, in selling the plaintiff’s gin on credit to Chapin, nor in collecting the money. Chapin failed before the money was payable. But the defendant took, as security from Chapin, his negotiable note payable to himself or his order. It is not pretended that the defendant was to guaranty Chapin’s payment, or that he had any commission on that account. The only point is, whether the defendant, by receiving from Chapin his note payable to himself, or his order, made himself liable, in all events, to the plaintiff, for the payment of the money due on the note.
My present opinion is, that on general principles of the law merchant, independent of any usage in Boston, the defendant did not make himself thus liable; but if there be any doubt as to these general principles, evidence of the general and uniform usage in Boston, where the plaintiff sent his goods for sale on commission, that the factor takes negotiable notes for payment in his own name, but in trust for the principal, may be legally given in evidence.
Upon these grounds I am satisfied that the. verdict ought to be set aside, and a new trial granted.

Per Curiam.

New trial ordered.

[a) [See Reed vs. Upton, 10 Pick. 525.—Jones vs. Kennedy, 11 Pick. 131.— Walkins vs. Hill, 8 Pick. 522; where it is held to be only presumptive evidence of pay *39 ment, which may be rebutted. The reason given by the chief justice does not seem to be satisfactory. It is all that the debtor can reasonably require, when sued upon simple contract, if judgment be suspended until the note, given for the same consideration, is produced and cancelled. — Raymond vs. Merchant, 3 Cowen, 147. — Hughes vs. Wheeler, 8 Cowen, 77. — In fact, the doctrine in the text does not very well accord with the decisions repeatedly made, that a promissory note may be given and received *.n evidence, to support a count for money paid or money lent. — ED]