## Case No. 7,144.

JACKSON v. ROBINSON et al.

[3 Mason, 138.] [1]

Circuit Court, D. Rhode Island. June Term, 1822.

[1] [Reported by William P. Mason, Esq.]

Mr. Searle, for plaintiff.
Mr. Hazard, for defendants.

STORY, Circuit Justice. The first question presented for consideration in this case is, whether the ship-owners are to be deemed partners as to the cargo, or tenants in common only in the same proportions which they held in the ship. It does not by any means follow because the purchase was made for the account of all, or the shipment was made in the names of all, that this constituted them partners in the sense of a joint interest. They might authorize a common agent to purchase or ship goods for them according to their several and separate interests, without involving themselves in a joint partnership responsibility. In my judgment there was no community of interest in the cargo, as partners. It appears from the admission of the parties, as well as the proofs, that they never were, nor designed to be partners; and that they held their titles to undivided por-tions of the cargo, not as a common, but as a separate interest. They were, therefore, tenants in common of the cargo, having no general community of the profit and loss, but only a proportion according to their sep-arate interests. If either had died, his share would not have survived to the others. To say that a case like the present constitutes in law a partnership in the adventure for the voyage, would be to say that every ten-ancy in common of a cargo for such a voy-age, consigned to the master, would turn the case into a partnership, and enable any one tenant in common to dispose of the whole. In point of law such a position cannot be maintained. See Hoare v. Dawes. Doug. 371; Coope v. Eyre, 1 H. Bl. 37; Rice v. Austin, 17 Mass. 197; Ex parte Hamper, 17 Ves. 403.

If no consignment had been made of the cargo in this case, each owner must have been considered as authorized to act in re-spect to his own share, and as having no au-thority over that of the others. The consign-ment made to the master of the whole did not vary their rights in this respect. He knew they were not partners, but tenants in common; and though his instructions were signed by all, it was not an act which was intended to confound their rights; but mere-ly to enable him to act upon the same orders for the benefit of all the owners. The in-structions show, that the parties always con-templated their interests in their own shares as distinct and separate; and the master is expressly directed, in case the sales exceed the cost of the contemplated cargo, to remit the respective proportions of the owners in the cargo, on their separate accounts, to London. The master had clearly no authori-ty to consign the whole of the cargo to Messrs. R. Potter & R. Robinson, in virtue of these instructions. He does not pretend that he had. He asserts a distinct verbal au-thority from Burrill on the day of his sail-ing, authorizing him to consign the share of Burrill & Cahoone to them. But this state-ment is incumbered with no small difficulty from the nature of the proofs. It is direct-ly denied by Burrill, who says, that he only authorized the ship to be reported to Messrs. Potter & Robinson at New York, and that he never contemplated her going at all to New-port. Indeed the other defendants do not assert any right as consignees derived under any general authority from Burrill & Ca-hoone. Their own private letter directing a stop at Newport was kept concealed from them; and in that very letter they speak only of their right to have their own shares of the cargo landed at Newport. I cannot, therefore, say that the master's conduct in his general consignment of the whole cargo to Messrs. Potter & Robinson, and in pro-ceeding to Newport with it and delivering it to them there, was justified by any authori-ty to be found in the proofs. He was him-self the general consignee; and upon the homeward voyage he ought to have made the

consignment general to himself for the use of the owners, or to them directly according to their respective shares.

The consignment then must be taken to be an unauthorized act of the master; and Messrs. Potter & Robinson could not, under such an act, legally acquire any lien to retain the same for any balance due to them even from Burrill & Cahoone, much less from Burrill, Cahoone, & Company. In respect to the facts, it is most manifest, that there was a real change, and not a mere nominal change in the partnership. Croade became a bonâ fide partner, and brought several thousand dollars of funds into the partnership; and all the accounts between Burrill & Cahoone and Messrs. Potter & Robinson were, with their perfect acquiescence and consent, transferred from the old to the new firm. The cargo was purchased by the new firm as agents for all the ship-owners, and their own notes given for the payment; and they received the funds belonging to the parties and arising from the cargo of a former voyage for the purpose of reimbursing themselves. The debts now set up as due to Messrs. Potter & Robinson, or either of them, are in no just sense the debts of Burrill & Cahoone, but of the new firm of Burrill, Cahoone, & Company. But assuming the posture of the facts to be somewhat different, and the consignment of the master to Messrs. Potter & Robinson to be a justifiable act within the scope of his authority, it will not materially vary the rights of the parties. The consignment would then be countermandable by Burrill & Cahoone, subject to any existing lien of the consignees. There is no ground to assert, that these gentlemen have, by any express or implied agreement, acquired a lien on the cargo for any debts due to them or either of them, by the firm of Burrill, Cahoone, & Company. The whole evidence negatives such a supposition. The assignment then must be deemed to operate as a legal transfer of the interest of Burrill & Cahoone to the plaintiff, while it was yet in transitu; and the defendants could not, after notice of such assignment, acquire any title to a subsequent lien in virtue of their possession. They took the property, clothed with all its legal and equitable qualities in favour of the plaintiff.

What ground then is there to permit them to set up against the plaintiff any lien, or any set-off for debts not originally, and before the assignment. attached to the property? Upon the principles of equity none. All that can be reasonably required is that they should be paid for their disbursements and expenses in respect to the property, and any other charges, that fairly belong to them for payments made on account of the bonds or notes secured by the assignment. Whether the latter ought to be allowed, I do not now absolutely decide; though the present inclination of my opinion is in favour of the allowance.

But it is supposed that the defendant, R. Robinson, is entitled to set off against the plaintiff the debts due him from the firm of Burrill, Cahoone, & Company, because it is suggested he would be entitled to set off any debts due him from Burrill & Cahoone. I am by no means prepared to admit that he would, under the circumstances of the present case, have a right to set off against the plaintiff any such debt of Burrill & Cahoone. But it is not necessary to decide that point. The question here is much narrower, whether in a suit brought by A and B against him, he would have a right in equity to set off a debt due him from A, B, and C.; and if he could enforce that against A and B, whether he could, under circumstances like the present, enforce it against their assignee for a valuable consideration. I take the general doctrine as to set-off to be the same in equity as at law, though it was administered in equity long before the statutes of set-off. Joint debts cannot be set off in equity, any more than at law, against separate debts, unless there be some other circumstances calling for the equitable interference of the court. See Lord Lanesborough v. Jones, 1 P. Wms. 325; Ex parte Twogood, 11 Ves. 517; Ex parte Christie, 10 Ves. 105; Ex parte Stephens, 11 Ves. 24; Taylor v. Okey, 13 Ves. 180; Addis v. Knight, 2 Mer. 117; Ex parte Hanson, 18 Ves. 232; Ex parte Ross, 1 Buck, 125; Ex parte Blagden, 19 Ves. 465. In other words, there must be some equitable circumstances to entitle a party to a set-off, which cannot be reached at law.

1. As to the claim set up by the defendants, Potter & Robinson, for that portion of the cargo which was purchased with the money for which the bill of £383 10s. was drawn, it appears to me to be unfounded. The evidence does not establish it to have been purchased or shipped on their sole account; but it was shipped on account of all the ship-owners in the same manner as the rest of the cargo. The bill being drawn on Messrs. Potter & Robinson does not vary the case, any more than the whole shipment of the cargo being consigned to them, gave them an exclusive proprietary interest. The master admits that his reason for drawing the bill on Messrs. Potter & Robinson only, was because he had made the general consignment of the cargo to them.—2. I think, however, that they have a lien upon the cargo to the extent of that bill, if it has been paid by them, or if they have accepted it and shall hereafter pay it.

As the parties desire it, I will direct inquiries to be made as to the scheduled debts provided for, and the funds secured and received under the assignment.

These are all the observations which I think it necessary to make upon this case; and shall decree the defendants, Messrs. Potter & Robinson, to account before a master, making all proper allowances, &c. &c. The bill is to stand dismissed as against the

master, but without costs to him. Decree accordingly.