## ARTHUR FRENCH *versus* HENRY PRICE *et al.*

The signers of a contract in writing agreed therein to take an interest in a voyage, in specified proportions, and appointed P. and C (two of their number) their agents to fit out the vessel and manage the business of the voyage in this country, and ratified the purchase already made by them of the vessel, and gave them full authority to purchase a suitable cargo, and agreed that they should charge a certain commission on the amount of invoice and outfits, and on all returns, but none on the purchase or sale of the vessel. *It seems,* that the agents had authority to make purchases separately.

*It seems* also, that one who signed the contract after all the purchases had been made, thereby took an interest as an original purchaser, by a ratification of the acts of his associates.

*It seems* also, that the associates were tenants in common of the vessel and cargo, and not partners.

One of the agents having purchased goods for the voyage, and given therefor his own negotiable note, the vendor knowing at the time when the goods were delivered and the note taken, but not at the time of the sale, that other persons were interested in the purchase, it was *held,* that whether such other persons were partners or tenants in common with the agent, they were all originally liable to the vendor, but that the negotiable note of the agent was a payment, and so the others were discharged from their liability.

In an action against the parties concerned in the voyage, brought by one of the vendors of the goods for the use of himself and other vendors, upon several notes given by the agent, of one of which notes the plaintiff was the payee, and of the others the indorsee, it was *held,* that the payees of such other notes were competent witnesses on the part of the defendants, and compellable to testify, on the question whether at the time when the notes were taken, the plaintiff and the other vendors had knowledge that other persons, besides the agent, were interested in the purchases of the goods.

ASSUMPSIT on nine promissory notes, signed "Henry Price & Co.," one of them being payable to and owned by the plaintiff, the others being sued by him in behalf of the payees therein respectively named, by whom they were respectively indorsed to him "as agent." The declaration contained special counts on the several notes, and also the general money counts. Plea, the general issue

At the trial, before *Putnam* J., the plaintiff produced as a witness Elisha Copeland junior, who testified, that in October 1828, the defendants and the witness entered into an agreement as follows :

" Boston, Oct. 20th, 1828. We the undersigned hereby agree to take an interest in the proportion set against our respective names in a voyage to the coast of California, and we do hereby constitute and appoint Messrs. Henry Price & Co. and Elisha Copeland junior our agents to fit out the brig Plant and manage the business of the voyage in this country. The voyage is to be conducted and managed abroad by Capt. John Rutter and Mr. Joseph Steele, who are to go as joint super cargoes, and are to receive four per cent commission each in the net proceeds of all property sent or brought home by them (vessel excepted) with twenty dollars per month wages each ; which is to be in full compensation for their entire services in transacting the business of the voyage abroad. Messrs. Henry Price & Co. and E. Copeland junior have full authority to purchase a suitable cargo. The purchase of the brig Plant at fifty-five hundred dollars having been already effected, we do hereby agree to the same. Messrs. Henry Price & Co. and E. Copeland junior are to charge two and a half per cent on the amount of invoice and outfits, and two and a half per cent on all returns ; no commission for purchase or sale of the vessel.

(Signed)   One eighth, Henry Price & Co.
One half, A. W. Neal, for self, Joseph
    Winn, and John Winn junior.
One eighth, Thomas Welsh junior.
Three thirty second parts, John Rutter.
One sixteenth, Henry Price, for Caroline
    Gyzelaar's account, this 7th July, 1829
One thirty second part, E. Copeland junior.
One thirty second part, Henry Price & Co.
One thirty second part, Joseph Steele."

The defendants were Henry Price, Fitz James Price, Neal, Joseph Winn, John Winn junior, Welsh, Rutter and Steele, and the declaration alleged that they signed the notes as partners, under the firm and style of Henry Price & Co. It was admitted that Henry and Fitz James Price constituted a com

pany under the firm of Henry Price & Co., for general purposes of trade.

Copeland further testified, that he was one of the agents for carrying the agreement into execution, and that the notes in suit were given to the respective payees for goods purchased of them for that purpose, and which were shipped in the Plant, in pursuance of the agreement.

The defendants, after stating their points of defence, called Copeland again ; who said that he was one of the joint agents in this transaction ; that the arrangement between the defendants was intended to be a cash transaction, and that the accounts were made up to the 31st of January, 1829, and settled as being cash that day, though some of them were not paid until April following ; and that the credit of Henry Price & Co. was undoubted up to the morning of their failure, which was subsequent to the making of the notes.

Upon further examination by the plaintiff, the witness testified, that when the settlements between the defendants took place, all the bills of parcels had been brought in ; that he never inquired of H. Price & Co. how they paid for the goods, nor the price, and that he was never consulted by them as to the goods which they purchased ; that he did not know that any of the other owners ever examined the original invoices and bills ; that the defendants were charged with these purchases ; that by an arrangement between him and H. Price & Co., he was to purchase a certain proportion, and H. Price & Co. the remainder of the cargo ; that he gave his own notes for such goods as he purchased for this enterprise, and H. Price & Co. gave theirs for the remainder, including the notes in question ; that there was an invoice book kept for this sole purpose, in which all these purchases were entered, which was kept open for the inspection of all the parties ; that the witness cleared the vessel as shipper of the cargo, and procured the sellers of the goods entitled to debenture, to make the oaths in the outward entries, and that the Plant sailed on the 19th of January, 1829 ; that the accounts were made out with the parties respectively, and that they paid their respective quotas in cash and not by notes ; that he knew of no conversation between the other defendants and H. Price & Co or with

himself on the subject of the purchases ; that the associates never interfered, and the agents did as they pleased, the accounts being kept open by them for the inspection of the parties whenever they should see fit to call.

The witness also testified, that Rutter could not have signed the agreement until two or three days before the vessel sailed. The plaintiff objected to this testimony as tending to alter, control and contradict written documents, but it was ruled in, the Judge reserving the question.

The defendants then produced Messrs. Page, Weld and Searle, (who were payees of some of the notes sued,) as witnesses to show that the plaintiff and the other payees of the notes, at the time of the transaction in question, severally knew that H. Price & Co. were jointly concerned with others in the enterprise for which these goods were purchased. Whereupon the plaintiff's counsel, in behalf of the witnesses as well as of the other persons interested, objected to their being compelled to testify, they being in fact parties in the case. But the objection was overruled and they were sworn and examined.

The defendants put in other evidence on the point of knowledge ; which was considered to be the only question of fact in controversy.

The jury found that the vendors of the goods did not know, at the time of the sale, that they were for the brig Plant ; that at the time of the delivery of the goods and settlement therefor, the vendors did know that they were for the brig Plant, and that other persons besides H. Price & Co. were interested in the voyage ; that the vendors did not know, at the time of the sale and delivery of the goods, that H. Price & Co. had associates in the purchase of the goods, other than as tenants in common ; and that the defendants did not promise in manner and form as the plaintiff had declared against them.

The verdict was entered generally for the defendants, reserving the questions raised by the counsel upon the nature and effect of the written contract, upon the evidence as reported, upon the form in which the notes were given, and upon the special finding of the jury.

*Fletcher* and *C. G. Loring*, for the plaintiff.  As to the

objection, that the plaintiff, when he took the note of H. Price & Co., knew that other persons were interested with them in the purchase, they said that the time of the sale fixed the relative rights of the parties ; that if the bargain then was, that H. Price & Co. should have the goods upon giving their own notes, the vendors were bound to complete the contracts accordingly, notwithstanding they had discovered, before taking the notes, that others were concerned in the purchase ; but they would still retain their right of action against all the parties interested. *Woodward* v. *Winship*, 12 Pick. 430 ; Gow on Partn. 176 ; *Robinson* v. *Wilkinson*, 3 Price, 538.

*S. Hubbard* and *C. P. Curtis*, for the defendants. To the point, that the vendors of the goods, having taken the negotiable notes of H. Price & Co., knowing that other persons were interested in the purchases, thereby discharged such other persons, they cited *Kearslake* v. *Morgan*, 5 T. R. 513 ; Hob. (Wms.'s ed.) 69 *d* ; *Thacher* v. *Dinsmore*, 5 Mass. R. 299 ; *Goodenow* v. *Tyler*, 7 Mass. R. 36 ; *Wiseman* v. *Lyman*, 7 Mass. R. 286 ; *Maneely* v. *Magee*, 6 Mass. R. 143; *Johnson* v. *Johnson*, 11 Mass. R. 359 ; *Chapman* v. *Durant*, 10 Mass. R. 47 ; Civ. Code of France, *art.* 1281 ; *Arnold* v. *Camp*, 12 Johns. R. 409 ; *Sheehy* v. *Mandeville*, 6 Cranch, 253, 264 ; *Cornwall* v. *Gould*, 4 Pick. 444 ; *M'Lellan* v. *Crofton*, 6 Greenl. 307 ; *Witherby* v. *Mann*, 11 Johns. R. 518 ; *Whitcomb* v. *Williams*, 4 Pick. 228 ; *Parker* v. *United States*, 1 Peters's Circ. C. R. 266.

MORTON J. delivered the opinion of the Court. The object of the present suit is to recover the price of certain merchandise alleged to have been sold by the plaintiff and others to the defendants. The contract of sale was made by H. Price & Co. with the owners of the merchandise. But it is manifest that H. Price & Co. acted as agents. And whether they disclosed their agency or not, the property did not pass to them, but to their principals. The defendants and one Copeland became the owners of the brig Plant, and engaged in a voyage to California. They employed H. Price & Co. and Copeland to be their agents in the purchase of a cargo for this voyage, and they agreed to become owners of the vessel and cargo in certain unequal proportions, stipulated between them.

French
v.
Price.

In consequence of this agreement, these agents, acting *separ-ately* and not *jointly*, purchased of different individuals merchandise which was shipped on board the vessel, and the voyage was performed.   The property for which the plaintiff now claims payment, was purchased by H. Price & Co.   The defendants contend, that they are not liable, because H. Price & Co. had no power to bind them, except the authority given in the written agreement, and this was a *joint* authority which could be legally executed only by *all* of the agents.   But in looking into the terms of the agreement and the nature of the transaction, it is at least doubtful whether it was the intention of the principals, that both of these agents should join in every purchase to be made and in every act to be done.   It is quite as probable that the intention of the parties was, that they should have power to act separately, and thus divide the labor between them.   But however, in strictness, this instrument might be construed, it is very clear that here was a ratification of the separate acts of the several agents, by the acceptance of the property purchased by them.   It was also objected, that Rutter, one of the defendants, did not become a party to the agreement till after the purchase of the cargo, and so he could not be liable to the vendors.   But I think the same answer may be given to this objection as the last.   He was one of the projectors of the voyage.   He intended from the beginning to be one of the associates, and undoubtedly meant that this agreement should take effect from its date.   He became one of the owners of the cargo.   How ? by buying of the other owners ? or by becoming one of the original purchasers, by a ratification of the acts of his associates ?   I think clearly the latter.

A subsequent ratification is equivalent to a previous authority.   The case, then, comes before us free from these objections, and just as it would, if no question had been raised in relation to the agency, or the signature of Rutter.

The merchandise in question passed directly from the vendors to the owners of the Plant.   They became the owners of the vessel and cargo.   But how did they hold it ?   Was it as partners or as tenants in common ?

The ownership of vessels, by several individuals, is one of

the most common occurrences in mercantile affairs. Part owners of vessels are not necessarily nor usually partners. Partners, as such, may be ship owners, but generally part owners are tenants in common. There is, then, no presumption in law or in fact, that the several owners of the Plant were partners. Abbott on Shipping, (Story's ed. 1829,) 68 ; *Lamb* v. *Durant*, 12 Mass. R. 56.

The purchase of the vessel, and the preparation for the voyage, seem to be one enterprise ; and if there was a partnership in the voyage, it probably extended to the vessel. The plaintiff contends that the special agreement between the parties and the nature of the transaction clearly show a partnership. But, in drawing all the light I can from both these sources, it appears to me that the parties did not intend to form this relation. The proportions in which they were to be interested were exactly fixed ; agents were appointed to procure a cargo, fit out the vessel, and transact all the business in this country ; and other agents were appointed to transact the business abroad, their compensation was fixed, the whole of the business in relation to the purchase of the vessel and cargo and to the outfit were to be brought to a speedy close, and all was clearly intended to be a cash transaction. Accordingly the business was settled soon after the vessel sailed, and each one paid to the agents his respective proportion of all the expenses. It would seem, also, that the enterprise was intended to be terminated with the voyage, for the sale of the vessel must have been contemplated, or it would not have been stipulated that no commission should be charged on such sale. Can it then be supposed, that the parties intended to become partners, thereby giving to each one of the associates the power to sell the outward or return cargo, or the vessel itself ? Did this agreement or these transactions create a legal partnership against the intention of the parties ?

Similar transactions and enterprises are very common in our country ; and I believe, among merchants, never are considered or treated as partnerships. Many cases occur in which it may be extremely difficult to determine whether the joint owners of property hold it as partners or as tenants in common. The case at bar may be one of them But although

the connexion between the owners of the Plant and cargo certainly contains many of the ingredients and properties of a partnership, yet, speaking for myself, I must say that in my opinion it does not come up to that legal relation. The case of *Thorndike* v. *De Wolf & Tr.*, 6 Pick. 124, bears some resemblance to this ; and that of *Jackson* v. *Robinson*, 3 Mason, 138, seems to me to be decisive. I yield entire assent to the doctrine of that case, as well on account of the soundness of the reasoning as the high authority of the learned court in which it was adjudicated.

But on the question of partnership the Court have not come to a decision. Being of opinion that there is another ground of defence, which goes to the merits of the whole case, and is well sustained, the Court have not deemed it necessary to decide this point. We think that its determination would not at all aid or advance us in the decision of the case itself. Because whether the owners of the vessel were partners or tenants in common, they all were originally liable for the cargo They employed agents to purchase for them, and these agents not only might but necessarily would bind their principals, unless there was an express agreement to the contrary. And this is equally the case, whether the purchasers disclosed the agency or not.

The defendants being originally liable for the goods purchased, it is incumbent upon them to show that they were discharged from this liability.

When the contract of sale was made, the agents contracted in their own names. The vendors did not then know or suspect that others were interested in the purchase. The credit was manifestly given to the agents. Whatever equitable considerations may arise from this circumstance, it furnishes no legal reason why the vendors should not resort to the real purchasers, whenever they should discover that the contractors acted for others as well as themselves. And whether the authority to purchase was derived from the relation of partnership, or was expressly given, can make no difference.

The property was sold on a credit, and when the goods were delivered the vendors took the notes of the agents. Were these notes thus given by the agents and accepted under

the circumstance disclosed, payment ? Had the vendors an option to collect the notes or to sue on the original sale of the goods ? A negotiable note taken for property sold, or for a preëxisting debt by simple contract, is *primâ facie* evidence of payment. Although in England and in New York, and in some other States, the law is different, yet, in this State, the rule is too well settled, and has been too long practised upon, to be called in question. 5 Mass. R. 299 ; 6 Mass. R. 143 ; 7 Mass. R. 36, and 286 ; 11 Mass. R. 359 ; 4 Pick. 228 ; 6 Greenleaf, 307. And the principle is equally applicable, whether the note be given by a third person or by a part or all of the debtors.

The firm of Henry Price & Co. was well known to include two individuals only, viz. Henry and Fitz James Price ; and when the vendors took the notes of Henry Price & Co., they well knew them to be binding on these two partners only. There is no pretence that the owners of the Plant ever did business under this name or ever authorized any one to bind them by the use of it. There is therefore no resemblance between the several cases against Winship & al. and this case. Those were cases of dormant partners. The partnership was admitted. And by agreement of the partners the name of one of them was used for the style of the firm. A note given in the name of John Winship was in the partnership name, and if given in a partnership transaction clearly bound all the partners. Not so in this case. When the vendors took the notes of H. Price & Co. they expected to hold the two partners of that firm and no others ; and H. Price & Co. intended to bind themselves and no others. These two persons only were liable on these notes. And when they were received, they were presumptive evidence of payment, whether there was a preëxisting debt for the goods before sold, or the sale was completed at the time when the notes were given.

It is competent for the plaintiff to rebut this presumption. Is there any thing in the case tending to do it ? If there was any deception or fraud in the giving of the notes, or if they were accepted under an ignorance of the facts, or a misapprehension of the rights of the parties, the vendors ought not to be bound by the acceptance. They may repudiate the notes and rely upon the original contract of sale.

If when the notes were taken, the vendors supposed that the promisors only were holden for the goods, and that they were not changing the parties, but only taking new security from the same parties, then it is very clear that the original contract was not so far extinguished as to prevent a resort to it when new parties were discovered. But on the other hand, if the vendors knew others also to be liable, and chose to accept these notes and rely upon the promisors, it is equally clear that by so doing they discharged all the original parties from their liability. And if they knew others to be liable, it makes no difference whether they knew who those others were or not. If they did not know, it was their own fault that they did not ascertain, or that they discharged them without knowing.

This brings us to the inquiry, whether the vendors, when they accepted the notes of H. Price & Co., knew that others also were holden with them for the goods sold. We have already seen that all the owners of the Plant were bound by the contracts of H. Price & Co. How far was this known to the plaintiff and the other vendors? This is a material inquiry; indeed one on the decision of which the whole case must turn. Its importance seems to have been fully appreciated by the counsel on both sides. It is a mere question of fact, and proper for the decision of the jury.

To prove the knowledge of the vendors, the defendants called Messrs. Page, Weld and Searle, the payees in three of the notes. The plaintiff's counsel objected to the admission of these witnesses, in behalf of the witnesses themselves as well as his client. They were said to be the equitable owners, at least, of three of the notes. This objection was properly overruled and the witnesses admitted and compelled to testify. The plaintiff has no right to object, because the interest is in his favor and against the defendants. The witnesses themselves cannot claim an exemption, for all persons may be compelled to testify against their private interest, though not to implicate themselves in a criminal transaction. This point has very recently been directly decided in *Bull* v. *Loveland,* 10 Pick. 9.

At the request of the counsel of both parties, the jury were instructed to find the facts specially in relation to this point.

It appears from their finding, that at the time of the contract of sale, the vendors did not know that any persons beside H. Price & Co. had any interest in the purchase, but that at the time of the delivery of the goods and the taking of the notes they did know that they were to be a part of the cargo of the Plant, and that others were interested in the voyage, but that they did not know whether they were partners or tenants in common.

We have examined this point with care. And we think the effect of this finding of the jury cannot be mistaken. The substance of it is, that when the vendors accepted the notes in question, they knew that H. Price & Co. and others were owners of the goods sold, either as tenants in common or partners. They must necessarily have known that H. Price & Co. purchased them for the owners, including others with themselves, and of course that in the purchase they acted as agents ; and so that the real parties to the contract were the principals and not the agents. Now whether H. Price & Co. derived their authority from the appointment of their associates or from their relation to them as copartners, was entirely immaterial to the vendors. They knew that the owners of the Plant and cargo were liable to them. If they needed further information, it was owing to their own laches that they did not acquire it. They had quite enough to put them on inquiry and on their guard. With this knowledge the vendors accepted the notes of H. Price & Co. This was a satisfaction of the right of action which they before had against all the owners.

If the owners were partners, then the acceptance of the note of one partner is an extinguishment of the partnership debt. If they were tenants in common, and were bound by the contract of their agent, or were liable because the property went to their use, then the acceptance of the note of one tenant discharges the joint liability of all. The cases of *Arnold* v. *Camp* and *Chapman* v. *Durant* are in point. In the former, (12 Johns. R. 409,) two partners had given a note for a partnership debt. The promisee took a new note from one partner for the debt, and gave up the old note. Afterwards the new note was returned to the maker, and the old one restored, and an action brought upon it. The court held, that the

French
*v.*
Price.

acceptance of the new note, under the circumstances, was payment of the old debt, so that no action could be maintained against the partners. In the same manner the notes of H. Price & Co. extinguished the original debts against the defendants. In the latter case, *Chapman* v. *Durant*, 10 Mass. R. 47, it was holden, that the original liability of the joint owners of a vessel for supplies furnished for her, was discharged by the acceptance of a negotiable note from a part of them. This case has another feature of resemblance to the case at bar. It appears that the payees, when they accepted the note, did not know who the owners of the vessel were, although they knew there were other owners besides the promisors.

Upon the whole, we are well satisfied that although the defendants were originally liable for the goods purchased by H. Price & Co., yet that the acceptance of the notes under the circumstances disclosed, discharged them from this liability.

In the investigation of this case upon its merits we have intentionally passed over one question which was raised and discussed at the bar. The plaintiff declares against the defendants on nine notes, on one as payee and on the other eight as indorsee. On the production of the notes, they appear to be indorsed to the plaintiff as agent of the payees. It is objected that these indorsements do not so transfer the notes to the plaintiff as to enable him to maintain this action. In support of this objection one highly respectable authority, *Thatcher* v. *Winslow*, 5 Mason, 56, has been cited. It being a question which may require considerable examination, and one which is not at all necessary to the decision of the case, we have not supposed that our duty required us to enter into the investigation of it. Nor have we felt ourselves bound to inquire whether the plaintiff, if entitled to recover at all, could recover upon his other counts.

*Judgment on the verdict.*