## Myers *against* Entriken.

A factor who sells the goods of his principal, consigned to him for that purpose, and takes the notes of the vendee, which he has discounted for his own accommodation, thereby becomes responsible for the amount of the sales in the event of the insolvency of the purchaser.

ERROR to the District Court of *Allegheny* county.

James Entriken, Jun. against Myers & Richey. Case in *assumpsit*. The defendants received a quantity of blooms from the plaintiff to sell on commission. On the 27th of December 1841 they sold the blooms to Messrs King, Higby & Anderson, and on the same day informed the plaintiff, by letter, as follows : " We have sold your blooms to King, Higby & Anderson, at four, six and eight months' time, for $60 per ton, which was the best that could be done in our market," &c. The defendants endorsed these notes and discounted them in bank for their own use, having a private arrangement with the purchasers that the notes should continue to be renewed from time to time, as they became due, for one, two, or three renewals of sixty days, *if* the banks were willing to renew them.

As the notes severally fell due, they were accordingly renewed by new notes, drawn by the purchasers and endorsed by the defendants, deducting certain amounts paid on them at the time of renewal, sufficient to pay charges and expenses to defendants and some $200 or $300 over. After this, on the 10th of September 1842, King, Higby & Anderson stopped payment and became bankrupt; but some time after withdrew their bankrupt proceeding and compromised with their creditors. The defendants informed the plaintiff of the bankruptcy of King, Higby & Anderson, by letter dated 12th September 1842.

There was also some evidence that it was not unusual for consignors or factors, in Pittsburgh, to make such arrangements with their vendees, and to discount the notes for their own use in the banks, continuing to renew them from time to time, so long as the banks will permit. And upon this state of facts, the question in this case was, whether the defendants were liable for the whole amount of the goods sold, or only for the amount received?

GRIER (President) instructed the jury that the defendants were liable for the whole amount of the goods sold. Verdict and judgment accordingly.

*Lowry,* for plaintiff in error, cited 7 *Mass.* 37; 6 *Whart.* 1;

[Myers v. Entriken.]

21 *Wend.* 613; 20 *Pick.* 167; 6 *Cowen* 186; 15 *Pick.* 179; 1 *Rawle* 129; 9 *Conn.* 418.

*Kline,* for defendant in error, cited 1 *Eng. Com. L.* 250.

The opinion of the Court was delivered by

Gibson, C. J. — The usage of factors, said to prevail in Pittsburgh, to sell on account of their principal, take notes in their own names with an agreement to renew, and discount them for their own accommodation as long as the bank is willing, is a gross imposition, which can never be sanctioned by a court of justice. In this instance the defendants, who are commission merchants, sold at four, six and eight months; took the purchasers' notes in their own name, and discounted them in bank for their own use. Pursuant to a secret agreement with the purchasers, they were renewed, as they fell due, by other notes drawn and endorsed in the same way, till the period of the purchasers' bankruptcy, which occurred eight months and a few days after the sale. There cannot be a doubt that the plaintiff below was entitled to the produce of the discounted notes; but the defendants, in place of remitting it to him, employed it in their own business, and now insist that the accommodation was at the plaintiff's risk! It is said the sale was made for a better price than could have been had at a short credit, and that no sale of the article could have been effected on any other terms. Be it so. But why was not the produce of the notes remitted, and why was not the plaintiff suffered to have the use of his own money? The temptation to abuse, afforded by the usage, is too strong to be tolerated. The greater the number of renewals, the better for the factor, who would have not only his commission, but the use of the money in the mean time; and all at the risk of the principal! Surely, that cannot be the law. Nothing is more familiar than that the principal is to have all the increase made on his property; and it was held in *Rogers* v. *Boehm,* (2 *Esp. Ca.* 704), that an agent is liable for interest, where any has been made, on a balance in his hands. Such is the general rule, though in England there are exceptions to it, where, for instance, the principal was informed of the state of the case, but desired the agent to keep a large balance in hand, as in *Chedworth* v. *Edwards,* (8 *Vez.* 48), or where the accumulation was known to the principal for a great length of time, as in *Beaumont* v. *Boultbee,* (11 *Vez.* 360). Such, however, would scarce be held the rule of interest in Pennsylvania. In *Diplock* v. *Blackburn,* (3 *Camp.* 43), Lord Ellenborough said, that a usage authorizing an agent to make a profit by a bill on his principal, is a "usage of fraud and plunder," and not to be tolerated. We are not here, however, on a question of interest or profit made, but on a question whether the defendants did not make the notes their own, by using them as their own. The point seems almost to have been determined

in *Lefevre* v. *Lloyd*, (5 *Taunt.* 749 ; S. C., 1 *Marsh.* 318), where a broker who had sold the goods for a bill at a given day, was held liable to his principal on a bill which he himself had drawn on the purchaser. So in *Simpson* v. *Swan*, (3 *Camp.* 291), a factor who had taken a security for the price of goods sold in his own name, and who had given his own security to the principal for the proceeds, was held liable on it after the failure of the purchaser. These cases go on the principle that he had treated the original debt expressly as his own; and they do not entirely come up to the point before us. But in *Goodenow* v. *Tyler*, (7 *Mass.* 36), after holding on very sufficient ground that a factor who sells on a credit and takes notes in his own name, does not by that alone become liable to the principal in the event of the purchaser's failure, Chief Justice PARSONS said, that it would be otherwise were he to negotiate them for his own use. Is not that the very case? The same thing, in effect, was asserted in *Wren* v. *Kirton*, (11 *Vez.* 382), where it was said that an agent who places his principal's money to his own account with his general banker, takes the risk of the banker's failure; for that he cannot so deal with it as to be able to treat it as the money of his principal, or as his own, according to the event. Neither could these defendants treat the money in contest as their own, when it suited their convenience to use it, and as the money of the plaintiff, when it suited their convenience to cast the loss of it on him. By discounting the notes for their accommodation, they made them their own, and became personally liable for the amount of sales.

Judgment affirmed.