## WILLARD CARKIN *vs.* GEORGE SAVORY.

A written guaranty of "the payments of all powder consigned" to a certain person for sale will not cover a sale to the consignee of the powder remaining unsold upon closing the account between the consignor and himself; and cannot be controlled by evidence of a custom among commission merchants, known to the guarantor, to purchase goods remaining unsold under such circumstances, and to treat such a transaction as a sale to a third person.

A guaranty of the payment of goods consigned to a third person for sale is discharged by the consignor's taking from the consignee a promissory note payable at a future time for the price of the goods, after it has become due.

ACTION OF CONTRACT upon the following guaranty, signed and sealed by the defendant on the 9th of July 1853 : " For and in consideration to me paid by Willard S. Carkin of Bennington, N. H., and Henry P. Upton of Salem, I hereby agree to guaranty the payments of all powder consigned by the said Willard to the said Henry for sale, and the said Henry is to receive out of the sales two and a half per cent. for selling and the same for guarantieing."

At the trial in the court of common pleas in Essex at December term 1856, before *Mellen,* C. J., the plaintiff sought to recover the amount of two promissory notes made by Upton, for $296.37, and $130.85; and called John Carkin, who testified that he was the plaintiff's agent, and that, after the plaintiff had received the guaranty, he consigned powder from time to time to Upton for sale, and received from the proceeds of the sales sometimes cash, sometimes saltpetre, sometimes notes purporting to be those of the purchasers of the powder, and once a note of Upton himself; that accounts of the sales of powder were occasionally settled between the plaintiff and Upton, and that the note for $296.37 was given for a balance found due to the plaintiff upon such an account for sales of powder made by Upton ; that there were then about forty kegs of powder remaining unsold, and which at his request Upton purchased, upon condition that there should be deducted from the price a sum equal to twice the amount he had been receiving for commissions, namely, ten per cent., and gave therefor the note for $130.85.

Upon these facts the defendant requested the presiding judge to rule : " 1st. That the guaranty referred only to payments to be made by the purchasers of the powder to Upton, and not to those to be made by Upton to the plaintiff. 2d. That the sale of the powder, for which the note of $130.85 was given, was not a transaction contemplated by the guaranty, and that the payment of the price was not in any manner secured by said guaranty to the plaintiff." But the judge refused so to rule.

The defendant then requested the judge to rule " that the plaintiff could not maintain his action, inasmuch as it appeared that, at the time the balance was due and the notes were taken, time had been given to Upton, and that the plaintiff, by taking the notes, had deprived himself of the power of suing Upton until the maturity of the notes, and that consequently the guarantor was discharged." But the judge refused.

A verdict was taken for the plaintiff for the amount of both notes, and the defendant alleged exceptions, which were argued and decided at Boston in January 1858.

*J. A. Gillis,* for the defendant.

*T. P. Pingree, Jr.* for the plaintiff.

DEWEY, J. Assuming that the guaranty of the defendant covers all consignments for sale, that were made to Upton, as is alleged by the plaintiff; yet, as it seems to us, the guaranty would not embrace the indebtedness of Upton, for which he gave the note of $130.85. That note was given upon the consideration of an absolute sale of forty kegs of powder. By the terms of that contract Upton became the absolute debtor of the plaintiff to this amount, and that entirely irrespective of his opportunity to sell the same. This created a very different relation between the parties from that of consignor and consignee, which was the subject of the guaranty. The defendant might have been willing to guaranty the fidelity of Upton to account for all actual sales of goods consigned to him, and with the right to return those unsold, and yet have been unwilling to assume the responsibility of absolute purchases by him to be retained whether he could sell them or not.

2. As to the note for $296.37, as the case is presented on the

bill of exceptions, it would seem to fall within the principle settled by this court in the case of *Chase* v. *Brooks*, 5 Cush. 43, where the taking of a note of the party whose indebtedness was guarantied after the debt had become due, payable at a future day, was held to discharge the guaranty. The objection is not that a note was taken of the same amount as the liability; but that after the liability to pay had attached, and the creditor might enforce his demand, he extended the time of payment. Nor does it vary the effect in discharging the guarantor, that at a previous settlement of a consignment, Upton had given his note payable at a future day, if without the knowledge or consent of the defendant. The court are of opinion that, as to this note, the case ought to have been submitted to the jury under instructions that, if they found the same was taken by the plaintiff after the debt of Upton had become due and payable, and he thereby extended the time of credit to Upton, without the knowledge or consent of the defendant, and without any subsequent ratification or assent by him, the guaranty was discharged.                     *Exceptions sustained.*

A new trial was had in the court of common pleas at December term 1858, before *Perkins*, J., when the plaintiff introduced substantially the same evidence as at the first trial, of the settlement between the plaintiff and Upton, and the purchase of the powder by the latter.

The plaintiff also offered to prove that there was a custom and usage, long and well established among commission merchants, by which in all cases, upon the close and winding up of a series of transactions between a consignor and consignee of merchandise, the consignee might take to himself any remnant of goods that had been consigned to him and remained unsold; and that this transaction was treated in all cases as a sale by the consignee to a third person, to be accounted for by the consignee in cash, at such price as the parties could agree upon; and that the transaction between Carkin and Upton was considered within this custom, and was to be treated as a sale by the consignee in the regular course of business, so that the pow-

der thus sold would come within the description in the guaranty of powder consigned for sale.

To this evidence of a custom the defendant objected, on the ground that such a custom would contradict the plain and obvious language of the guaranty.

The judge ruled " that no sale by the consignor to the consignee could be shown to charge the guarantor, as on a principal transaction ; that the guaranty covered only sales by Upton to third persons; still if, by custom and usage, known to this defendant when he gave the guaranty in suit, so that he must have had it in contemplation at that time, the consignee at the close of consignments like those contemplated in this guaranty, and as an incident to a series of such consignments, might take to himself any small balance or remnant of consignments he might have on hand at the time of closing and settling up, and this was always regarded as a sale by the consignee for every purpose between him and the consignor and third persons, and was so universally understood and so known to this defendant, and in his contemplation at the time of the guaranty, and such was the character of the closing up of the consignments of the powder in this case, the jury might find the defendant bound by such a sale as one covered by his guaranty, so far as this point was concerned ; but that such remnant and the sale thereof must be a mere incident to the consignments, must be of a small amount and a mere remnant in proportion to the whole amount of the consignments, and not a principal and separate transaction."

" As to what would be necessary in point of law to make out such a usage as would affect this defendant, the court ruled as requested by the defendant. The court also ruled that this evidence of custom or usage was not admissible to contradict control or vary the writing, but to apply it to the subject matter which the parties contemplated, understood and agreed was to be covered by, and was a part of it."

The jury returned a verdict for the plaintiff for the amount of both notes ; and the defendant alleged exceptions to the admission of the evidence of custom.

*Gillis*, for the defendant, cited *Parrott* v. *Thacher*, 9 Pick. 431; *Macomber* v. *Parker*, 13 Pick. 182; *Eaton* v. *Smith*, 20 Pick. 152; *Atkins* v. *Howe*, 18 Pick. 18; *Schooner Reeside*, 2 Sumner, 567; *Richardson* v. *Copeland*, 6 Gray, 538; *Randall* v. *Rotch*, 12 Pick. 107; 1 Greenl. Ev. §§ 292, 294; 2 Greenl. Ev. §§ 251, 252.

*Pingree*, for the plaintiff, cited *Goodenow* v. *Tyler*, 7 Mass. 36, 46; *Lowry* v. *Russell*, 8 Pick. 360; *Stevens* v. *Reeves*, 9 Pick. 198; *Parrott* v. *Thacher*, 9 Pick. 431; *Dwight* v. *Whitney*, 15 Pick. 179; *Trask* v. *Mills*, 7 Cush. 552; *Sumner* v. *Tyson*, 20 N. H. 384; 1 Greenl. Ev. §§ 292–294; Chit. Con. (8th Amer. ed.) 97, 98.

Shaw, C. J. The evidence in support of the second note was wrongly admitted. If the plaintiff will remit the amount of that note the verdict will stand. [The plaintiff assented.]

*Exceptions overruled.*