ABRAHAM ROSENBLUM & another *vs.* SPRINGFIELD PRODUCE BROKERAGE COMPANY.

Hampshire.  September 25, 1922. — November 27, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, Construction, Validity. *Partnership. Corporation. Equity Jurisdiction*, Discovery, Accounting, Adequate remedy at law. *Jurisdiction. Arbitrament and Award. Interrogatories.*

A contract in writing between a corporation, an individual conducting a business as produce broker, and a second individual, recited that the parties had "entered into a co-operative agreement to buy and sell onions in the Connecticut Valley this season," that the corporation and the broker were "to be the active operators in connection with this deal, . . . to keep an accurate item of all

of its purchases and sales . . . also an expense account in connection with its business . . . [that] expenses with the exception of the services of" the manager of the corporation and of the broker were to "be chargeable at the end of the season to what will be known as a joint expense account. Said expenses are to be deducted from the profits if there are any, and if not, each party to this contract shall bear an equal share of said expenses. The books of the" corporation and of the broker were to "be subject to inspection at any time by a duly authorized representative of any party to this contract." Warehouses of the corporation were to be leased "to this joint account." It was "understood and agreed by all parties concerned that the" corporation and the broker "shall conduct its business of buying and filling orders as in the past, but shall not have the right to embark in any speculative transaction in onions without the consent of the three parties to this contract. The duties and obligations of . . . [the third party] are that of a silent partner. He is to furnish the necessary capital for the conduct of this business, without charging interest on money advanced for this purpose, but he shall have the privilege of rendering an expense account for all the money disbursed in connection with the buying or selling of any onions owned or controlled by the three parties to this contract, and said expenses shall be charged to the joint account in the same manner as the expenses of the other two parties to this contract. It is understood that the services of. . . [the corporation manager and of the broker] being given free of charge, shall constitute an offset for the use of the money supplied without interest by . . . [the third party] . . . It is also agreed that at the end of the season all parties to this contract shall render a proper accounting to each other of their receipts and disbursements, and they are to share equally in the loss or profits accruing from the operation of this business on a joint account basis." During the season, the corporation and the broker signed a certificate that, as the third party was finding the capital to pay for onions stored, warehouse receipts should be issued to him. The third party and the broker brought a suit in equity against the corporation for discovery of books and accounts and for an accounting. The defendant demurred. *Held*, that

(1) The contract on its face was not a contract of partnership, and the corporation could enter into it;

(2) The defendant corporation, in the absence of evidence, could not be presumed to have intended to make an *ultra vires* contract;

(3) It appearing that the dispute between the parties went to the root of their relations, a provision of the contract, that in the event of a disagreement "the matter in dispute should be left to a Board of Arbitration whose decision was to be final and binding upon the parties," could not be invoked to prevent the plaintiffs, who had not alleged that they previously had sought an award of a board of arbitration, from maintaining the suit;

(4) The plaintiffs did not have a full, adequate and complete remedy at law;

(5) The right to interrogate under G. L. c. 231, §§ 61–67, 144, did not impair relief by discovery in a suit in equity;

(6) The bill disclosed sufficient ground for relief in equity.

BILL IN EQUITY, filed with a writ of summons and attachment dated October 10, 1921, by Abraham Rosenblum and Joseph Rosenblum against the corporation, Springfield Produce Broker-

age Company, for discovery and an accounting under the provisions of the contract in writing, described in the opinion, between the South Deerfield Onion Storage Company, of which the plaintiff Joseph Rosenblum was proprietor, the plaintiff Abraham Rosenblum and the defendant.

The defendant demurred on the following grounds:

"1. It was beyond the corporate power of the defendant corporation to make the alleged contracts on which plaintiffs rely as the foundation of their case. . . .

"2. The matters complained of were in the event of disagreement to be left to a board of arbitration, consisting of three people whose decision was to be final and binding upon all parties concerned, as provided in one of the alleged contracts . . . which scheme of settlement does not permit plaintiffs to maintain this suit.

"3. There is no equity in plaintiffs' bill and plaintiffs have a plain adequate and complete remedy at law, if not as set forth in clause 2."

After a hearing by *Irwin, J.,* an interlocutory decree was entered overruling the demurrer and, being of opinion that the correctness of his ruling should be determined before further proceedings in the Superior Court, he reported the suit upon the pleadings and interlocutory decree to this court for such determination.

*W. L. Stevens, (J. R. Callahan* with him,) for the plaintiffs.

*J. C. Hammond, (T. R. Hickey* with him,) for the defendant.

RUGG, C.J. This is a suit in equity wherein the plaintiffs seek an accounting under two contracts to which they and the defendant are the sole parties. The first of these contracts, dated on July 28, 1919, recites that the three parties have "entered into a co-operative agreement to buy and sell onions in the Connecticut Valley this season." The next paragraph is in these words: "The Springfield Produce Brokerage Co. Inc., and the South Deerfield Onion Storage Co., are to be the active operators in connection with this deal, and these two companies agree to keep an accurate item of all of its purchases and sales dating from July 28, also an expense account in connection with its business. These expenses with the exception of the services of Mr. Wirt Goodwyn, President and Treasurer of the Springfield Produce Brokerage Co. Inc., and Mr. Joseph Rosenblum owner of the South Deerfield Onion

Storage Co. shall be chargeable at the end of the season to what will be known as a joint expense account. Said expenses are to be deducted from the profits if there are any, and if not, each party to this contract shall bear an equal share of said expenses. The books of the two said companies shall be subject to inspection at any time by a duly authorized representative of any party to this contract." Then follows a paragraph providing for the lease for the season of certain warehouses belonging to the defendant for a stipulated price "to this joint account." The next three paragraphs are in these words: "It is understood and agreed by all parties concerned that the Springfield Produce Brokerage Co. Inc., and the South Deerfield Onion Storage Co., shall conduct its business of buying and filling orders as in the past, but shall not have the right to embark in any speculative transaction in onions without the consent of the three parties to this contract. The duties and obligations of Mr. A. Rosenblum are that of a silent partner. He is to furnish the necessary capital for the conduct of this business, without charging interest on money advanced for this purpose, but he shall have the privilege of rendering an expense account for all the money disbursed in connection with the buying or selling of any onions owned or controlled by the three parties to this contract, and said expenses shall be charged to the joint account in the same manner as the expenses of the other two parties to this contract.

"It is understood that the services of Mr. Rosenblum and Mr. Goodwyn being given free of charge, shall constitute an offset for the use of the money supplied without interest by Mr. A. Rosenblum. It is mutually understood and agreed that there is nothing in this contract which shall apply to any onion transaction which Mr. A. Rosenblum shall have this season outside of the Connecticut Valley.

"It is also agreed that at the end of the season all parties to this contract shall render a proper accounting to each other of their receipts and disbursements, and they are to share equally in the loss or profits accruing from the operation of this business on a joint account basis."

On August 26, 1919, a certificate signed by the other two parties was issued to the plaintiff A. Rosenblum stating that, as he was furnishing all the capital for onions stored in warehouses

of the defendant, warehouse receipts covering all onions stored should issue to him, concluding with the statement that the only interest of the signers "in this deal, is the net result of profit or loss accruing from this transaction, as per contract of July 28th, 1919."

The averments of the bill, after setting out the contracts, are in substance that pursuant thereto the plaintiff A. Rosenblum advanced to the defendant more than $100,000, and large amounts of onions were purchased and sold, and that no more business remains to be done under the contracts; that the defendant refuses to permit examination of its books; that the plaintiffs believe large quantities of these onions have been shipped to pay debts of the defendant and its treasurer, and that there have been other irregularities in the conduct of the defendant. There are prayers for discovery as to the books and accounts of the defendant, for ascertainment of the amount due each party under the agreements, and for general relief.

The first ground of demurrer urged by the defendant is that the contracts constitute a copartnership which was beyond he corporate power of the defendant.

It is familiar law that corporations are not authorized to enter into ordinary partnerships. *Whittenton Mills* v. *Upton,* 10 Gray, 582. *Williams* v. *Johnson,* 208 Mass. 544, 552. *Hosher-Platt Co.* v. *Miller,* 238 Mass. 518, 523.

Whether a partnership was attempted between these parties depends entirely upon the construction of the written instruments, because there has been no hearing, there has been no finding of facts, and the case is presented on demurrer. It seems not practicable at present to phrase a comprehensive and precise definition adequate to embrace all arrangements which are partnerships and to exclude all which are not. See *Meehan* v. *Valentine,* 145 U. S. 611; *McMurtrie* v. *Guiler,* 183 Mass. 451; *Pooley* v. *Driver,* 5 Ch. D. 458; *Estabrook* v. *Woods,* 192 Mass. 499, 502; Draft Uniform Partnership Act in Terry's Uniform State Laws, 415, 416, 419, 420. Resort has been had to various tests from time to time as aids in the solution of questions presented for decision. One often applied is sharing in the profits and losses of a business venture. This, however, is not an unfailing rule because there are numerous instances of joint owners who have a common

interest in the profits and losses of an adventure and who are not partners. *Thorndike* v. *DeWolf,* 6 Pick. 120. *French* v. *Price,* 24 Pick. 13. *Buck* v. *Dowley,* 16 Gray, 555. *Atkins* v. *Lewis,* 168 Mass. 534. *Jackson* v. *Robinson,* 3 Mason, 138. *Magee* v. *Magee,* 233 Mass. 341, 345.

One term of the contract or one aspect of the relationship cannot be fastened upon to the exclusion of other parts. The whole scope of the arrangement must be examined and each of its parts considered in relation to all the other parts in order to ascertain the real intent of the parties and the genuine meaning of the contracts.

Analysis of the agreements here in issue leads us to the conclusion that a copartnership was not intended by the parties, and is not the necessary result of the contracts. This is a suit between the parties, not involving the rights of third persons, and in such cases a partnership commonly is held to exist only when such is the intent of the parties. The documents appear to have been drawn with some degree of care and business sagacity. They do not name the relationship established between the parties as a partnership but as a "co-operative agreement." Expenses connected with it are termed "joint account" and "joint expense account." No common or separate books of the transactions to which the contracts relate are to be kept. Each of the two "active operators" is to keep his individual and distinct account. It is expressly provided that each active operator "shall conduct its business of buying and filling orders as in the past." The fair import of these words is that each is to continue its business as theretofore, detached and independent from the other. Each is to buy and sell in his own name, on his own judgment as to prices, and untrammeled as to the customers with whom he shall deal either as buyer or seller. There is no community of management. There is no sharing of responsibility. Neither acknowledges or is subject as to his own business to the rights of a copartner in the other, and neither possesses or assumes such rights as to the business of the other. The freedom of action of each in these respects is limited only by the phrase that he cannot "embark in any speculative transaction in onions without the consent of the three parties to the contract." "Speculative transaction" in this connection means one outside the range of ordinary

buying and selling as dealers or brokers and involves elements of risk and uncertainty dependent upon fluctuations in the market more or less remote in time, upon engagements extraordinary in magnitude, upon commitments exceptional in nature, upon undertakings for future sales not grounded on property in hand or on actual purchases or contracts already made, or upon ventures otherwise partaking of business hazards promising large returns if fortunate and involving considerable losses if disastrous, or in other respects outside the common conduct of trade. All purchases and all sales are to be made by each of the "active operators" according to the nature of his several dealings. Neither has a right to interfere in the business of the other. If Joseph Rosenblum had died it would hardly be thought that the other two parties to the contract as surviving partners could have closed out his business.

The plaintiff A. Rosenblum is given by the contracts no power over the conduct of the business of either of the other two except that his consent must be given before either could engage in a "speculative transaction." The contracts do not fix the amount of money which he shall advance. He simply is required to furnish "the necessary capital." That sum, being undefined, was left to be determined from time to time as the parties might agree. He has no title to the onions purchased from time to time by either of the others. The supplementary contract of August 26, 1919, recognizes this situation by providing in specific terms that, since he has furnished the money for their purchase, the onions are to be stored in his name and warehouse receipts therefor are to be issued to him. Manifestly this was an attempt to give special property security or title to him with respect to all onions in storage. It was not in harmony with the idea of partnership. Aside from this special security, apparently he had no title or community of ownership in the goods purchased by either of the other parties to the contracts. He alone could hardly have made a sale of them. He had no proprietary interest in the profits made by either of the other two while they were undivided. He had no lien on the assets of the joint undertaking. It was said in *Estabrook* v. *Woods*, 192 Mass. 499, at page 503, by Chief Justice Knowlton, that for one to share "in the profits as profits, within the true meaning of the cases, is to stand in such

relations to the business that the profits, or a share of them, are in his ownership as they accrue. He must have a proprietary interest in each dollar of profits as it is earned, so that he then has a right of possession or control of it for the purpose of retaining his share. This involves an ownership of an interest in the business that produces the profits. Through this comes the implied agency on which the liability of a partner for the contracts of his copartners is founded." The contracts did not put A. Rosenblum in this relation to the transactions here involved. The use of the words "silent partner" in the main contract as descriptive of the relation of A. Rosenblum to the affair is not decisive. The question is whether the essentials of the arrangement constitute the parties to it partners. *Brotherton* v. *Gilchrist,* 144 Mich. 274, 277.

If the goods purchased by either of the "active operators" had been attached by his individual creditor, it is difficult to see how such attachment could have been divested on the ground that the property attached belonged to a partnership. So, also, the same result would follow if the onions of which A. Rosenblum held warehouse receipts had been attached by his creditor.

It sometimes has been said that partnership implies community of property, community of interest and community of profits. The last is the only one of these elements assuredly present under these contracts.

It does not appear from the contracts or from the allegations of the bill whether either of "the active operators" were engaged in other produce business carried on concurrently in connection with the buying and selling of onions in the Connecticut Valley. There is nothing inconsistent with that in the contracts.

The agreements taken as a whole indicate that the defendant and the plaintiff Joseph Rosenblum, doing business as the South Deerfield Onion Storage Company, were in need of capital to carry on the business of buying and selling onions. The plaintiff A. Rosenblum was willing to provide them with the necessary money. The arrangement enabled the two "active operators" to secure sufficient capital for their needs. A. Rosenblum furnished this money, which upon a final accounting was to be returned to him without interest. The other two parties furnished nothing except the skill of the active manager of each. Each of the "active

operators" carried on his own business in his own way and was not required to aid the other in any way. The pecuniary interest of each would prevent destructive interference with the trade of the other. The business was limited to a restricted locality for a single season. At the end of the season there was to be a division of profits and losses. The defendant as a corporation in the absence of evidence cannot be presumed to have intended to make an *ultra vires* contract. If reasonably possible the contract ought to be construed to have established a lawful relation by the defendant. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50. *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 152.

No question of the rights of third persons is here involved. It must be presumed on this record that the parties in all honesty and good faith meant what was said in the contracts. It cannot be assumed that these instruments were ingenious contrivances or subtle expedients for securing the benefits of a copartnership while veiling the genuine purpose under a specious invention, designed by dexterous craftsmen in the scrivener's art to evade the responsibilities of a copartnership. It hardly needs to be added that courts will not be prevented by any mere forms from ascertaining the true nature of the relationship established and enforcing liability accordingly. *Adams* v. *Newbigging,* 13 App. Cas. 308, 315, 316. See cases collected in 18 L. R. A. (N. S.) at page 1084.

Our conclusion is that the parties did not intend on the face of the contracts to become partners. Mere participation in profits is not enough. As was said in *London Assurance Co.* v. *Drennan,* 116 U. S. 461, at page 472, "Persons cannot be made to assume the relation of partners, as between themselves, when their purpose is that no partnership shall exist. There is no reason why they may not enter into an agreement whereby one of them shall participate in the profits arising from the management of particular property without his becoming a partner with the others, or without his acquiring an interest in the property itself, so as to effect a change of title."

The case at bar on this branch appears to fall within the principle of numerous decisions. *Baxter* v. *Rodman,* 3 Pick. 435, 439. *Bradley* v. *White,* 10 Met. 303. *Cutler* v. *Winsor,* 6 Pick. 335.

*Bishop* v. *Hall,* 9 Gray, 430, 432.   *Meserve* v. *Andrews,* 104 Mass. 360.   *Denny* v. *Cabot,* 6 Met. 82.   *Holmes* v. *Old Colony Railroad,* 5 Gray, 58.   *Williams* v. *Knibbs,* 213 Mass. 534.   *Wheelock* v. *Zevitas,* 229 Mass. 167.   *Cambra* v. *Santos,* 233 Mass. 131, 135. *Weare* v. *Magee,* 234 Mass. 234.   *Adams* v. *Newbigging,* 13 App. Cas. 308.   *Cox* v. *Hickman,* 8 H. L. C. 268.   *Sutton* v. *Schaff,* 104 Kans. 282.   *Beecher* v. *Bush,* 45 Mich. 188.   *Wild* v. *Davenport,* 19 Vroom, 129.   *Ex parte Tennant,* 6 Ch. D. 303.   *Burnett* v. *Snyder,* 81 N. Y. 550, 556.   It is distinguishable from cases like *McMurtrie* v. *Guiler,* 183 Mass. 451, *Estabrook* v. *Woods,* 192 Mass. 499, *Deutschman* v. *Dwyer,* 223 Mass. 261, *Arnold* v. *Maxwell,* 223 Mass. 47, *Lindsay* v. *Swift,* 230 Mass. 407, 412, and *Howe* v. *Chmielinski,* 237 Mass. 532.

The agreement also provided that in the event of a disagreement "the matter in dispute shall be left to a Board of Arbitration" whose decision was to "be final and binding upon all parties concerned." Apparently the dispute in the case at bar goes to the root of the relations between the parties. If that be the situation, this clause hardly can be enforced under our decisions. *Pearl* v. *Harris,* 121 Mass. 390.   *Vass* v. *Wales,* 129 Mass. 38.   *Wood* v. *Humphrey,* 114 Mass. 185.   *White* v. *Middlesex Railroad,* 135 Mass. 216.   *Rowe* v. *Williams,* 97 Mass. 163. *Reed* v. *Washington Fire & Marine Ins. Co.* 138 Mass. 572, 575. *White* v. *Abbott,* 188 Mass. 99, 102.   *Lewis* v. *Brotherhood Accident Association,* 194 Mass. 1, 4.   *Bauer* v. *International Waste Co.* 201 Mass. 197, 202, 203.   *Brocklehurst & Potter Co.* v. *Marsch,* 225 Mass. 3, 9.   *Miles* v. *Schmidt,* 168 Mass. 339.   See *Meacham* v. *Jamestown, Franklin & Clearfield Railroad,* 211 N. Y. 346. Moreover, an award is not made a condition precedent to the right to sue and therefore the plaintiff was at liberty to resort to the courts. *Norcross Brothers Co.* v. *Vose,* 199 Mass. 81, 94, and cases there collected. The case at bar is distinguishable from cases like *Marsch* v. *Southern New England Railroad,* 230 Mass. 483, 493. This paragraph of the agreement is not a bar to the plaintiff's bill.

The plaintiff is seeking relief as to the settlement of accounts, and asks discovery as an incident. This is not a case where the relief of the plaintiff is full, adequate and complete at law. Hence a suit in equity can be maintained. The right to interrogate the

adverse party under the statute does not impair relief by discovery. The bill discloses on its face sufficient ground for equitable relief.

*Decree overruling demurrer affirmed.*