Petition of WILLIAMS. WILLIAMS v. WOLFF et al. In re BURGESS, LANG & CO. *

(Circuit Court of Appeals, First Circuit. April 11, 1924.)

Nos. 1678, 1695.

1. Bankruptcy ⬤⟿440—Order adjudging one to be partner not final or appealable, petition to revise being proper.

Order of court adjudging one to be a partner of an alleged bankrupt firm, *held* not a final decree, from which an appeal would lie; the matter being properly taken up on petition to revise.

2. Bankruptcy ⬤⟿382—Court empowered to direct preliminary inquiry as to membership of partnership.

Under Bankruptcy Act, § 19a (Comp. St. § 9603), the court may direct a preliminary inquiry into the membership of an alleged partner, for the purpose of aiding the creditors and itself in determining whether an offer of composition by other partners should be accepted and approved, or the sequestration of the estate of such member should be had, and it may send the question to a master to find and report the fact.

3. Partnership ⬤⟿362—Statute as to liability as general partners not applicable, where under agreement one stands to firm in relation of creditor.

If alleged partner was actually a partner, his failure to file certificate required by Gen. Laws Mass. c. 109, §§ 4, 5, relating to limited partnership, made him liable as a general partner; but if, under the agreement,

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 638, 68 L. Ed. —.

he was not a partner, but stood to the firm in the relation of a creditor, such provisions would be without application.

4. Partnership ⟨⟳⟩218(3)—Whether one a partner under agreement a question for court.

Whether or not under an agreement one is a partner, or merely a creditor of the firm, while it involves the ascertainment of a fact, being a question of construction, is a question for the court.

5. Partnership ⟨⟳⟩20—Relationship of parties held as defined In contract, and not as they understood.

In construing a contract between alleged bankrupts to determine whether a certain one was a partner, the question is not what the parties may have erroneously understood their rights and obligations were, but what they actually were.

6. Partnership ⟨⟳⟩1—Essentials of partnership stated.

Except when one allows the public or individuals to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner, unless by contract and with intent there is community of interest in some lawful commerce or business, for the conduct of which the parties eventually are principals of and agents for each other.

7. Partnership ⟨⟳⟩20—Agreement held not to constitute one partner in firm.

An agreement whereby one furnished money on which he was to obtain 10 per cent. interest and a certain share in the profits of a firm, the entire control and management of which was expressly given to others, who also held title to all the property, *held* not to render him a partner, though he was called a partner.

Petition to Revise and Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

In the matter of the estate of William H. Burgess, Howard W. Lang, Henry F. Palmer, Francis H. Coleman, and John G. Williams, individually and as copartners trading under the firm name of Burgess, Lang & Co., alleged bankrupts. From an order adjudging Williams a partner, he appeals and files petition to revise in matter of law. Order reversed, case remanded, and appeal dismissed.

Mark M. Horblit, of Boston, Mass. (Everett S. White and White & White, all of Taunton, Mass., and Horblit & Wasserman, of Boston, Mass., on the brief), for petitioner and appellant.

Hugh W. Ogden, of Boston, Mass. (Philip J. Sondheim and Hollis R. Bailey, both of Boston, Mass., on the brief), for respondents and appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. March 18, 1922, Wolff, Hamilton, and Stetson, creditors, filed a petition in bankruptcy against William H. Burgess, Howard W. Lang, Henry F. Palmer, Francis H. Coleman, and John G. Williams, individually and as copartners trading under the firm name of Burgess, Lang & Co., and March 21, 1922, receivers were appointed. Williams, within the time required by law, appeared and filed an answer denying that he was a partner, that he had committed the acts of bankruptcy set forth in the petition, that he was insolvent, that the petitioning creditors had provable claims against him, and requested a jury trial on the issues raised. May 15, 1922, the re-

spondents in the bankruptcy petition, other than Williams, filed a petition stating that they were copartners under the name of Burgess, Lang & Co. and as such proposed an offer of composition. The offer of composition was referred to a referee in bankruptcy, who reported that a majority in number and value of those who had filed their claims assented to the offer, but that a number of the creditors desired leave to examine the matter further. October 5, 1922, and while the petition for a composition was still pending, the petitioning creditors filed a.further petition requesting that the receivers be required to reduce to possession the assets of Williams, and that he be declared a general partner of the firm of Burgess, Lang & Co. At the hearing on this petition counsel for Williams called the court's attention to the fact that he had filed an answer and claimed a trial by jury, and that he insisted on such trial. The court, being of the opinion that it might be of assistance in the consideration of the offer of composition before adjudication to have a report upon the question whether Williams was a partner, ordered the issue of partnership sent to a master. At the hearing before the master counsel for the petitioning creditors submitted their evidence. Counsel for Williams offered none. Later the master filed a report stating the facts bearing upon the question of Williams' membership in the firm, upon which report the District Court entered an order adjudging Williams a partner, from which Williams appealed and also filed a petition to revise in matter of law.

[1] As the order under consideration was not a final decree or one adjudging the respondents bankrupts, no appeal lies therefrom to this court. The matter, however, is properly before us on a petition to revise.

The essential facts bearing upon the question of partnership reported by the master and upon which the order or decree was entered are as follows:

April 2, 1919, a written agreement was entered into between Burgess, Lang, Palmer, and Williams (to which Coleman later became a party), in which the three former were designated general partners, and Williams a silent or special partner. The agreement was prepared by the attorney for the parties other than Williams. By the second and fourth paragraphs the partnership was to continue until noon of the 2d of April, 1929, unless one of the partners gave notice in writing to the remaining partners at least 6 months before April 2, 1924, for its termination on that date.

By paragraph 3 Williams was to have the right to retire from the partnership on April 2 in any year on and after 1921, provided he gave notice in writing, at least a year in advance, of such intention; that, if he so retired, he should have the right to withdraw one-third of the capital furnished by him on the date of retiring, and one-third of such capital on April 2 in each of the two following years, but that the remaining partners had the right, on such dates, to pay him a larger portion or the whole of his capital, and should, in any event, pay him interest on his capital, and his share of the profits was to be reduced to correspond to his reduced capital.

By paragraph 5 it was agreed that Burgess had contributed to the partnership $70,000, Lang $95,000, Palmer $50,000, and Williams $100,000; that Burgess and Lang were each to be further credited with the sum of $50,000 as the value of their ownership of the good will of the business of Burgess, Lang & Co. (a partnership name under which they had theretofore done business); that each partner should have a right to increase his interest in the firm by paying to it on the 2d day of April in any year during the life of the partnership the sum of $5,000, or any multiple thereof, and to receive interest thereon and a proportionate share of the net earnings.

By paragraph 6 it was agreed that Burgess, Lang and Palmer should have "the entire management and control of the business, and that each should have and exercise all the rights of control and management usually belonging to members of a partnership"; that they *alone* should have the right and power to act for the partnership, to sign checks, notes, execute contracts and other written instruments, and the use of the firm name of Burgess, Lang & Co.; that the decision of any two of these three should be binding in all matters relating to the business; that Williams should have no authority to sign checks or notes or execute contracts or other written instruments, or to use the firm name, or otherwise to act for the partnership.

By paragraph 7 Burgess, Lang, and Palmer were to devote their entire time to the business and use their best skill and power in its conduct.

By paragraph 8 provision was made for keeping full and correct books of account of the business, to which any of the four parties named should have access at any time.

By paragraph 9 it was provided that neither Burgess, Lang, nor Palmer should indorse notes, or become surety on any bond for any person, or become bail or surety for any person, without the consent of the other parties.

By paragraph 10 it was provided that Williams should be a silent and special partner, and not held out as a general partner; that the title and the entire legal and equitable ownership of all bonds, stocks, contracts, leases, office furniture, good will, and all other assets of every kind of said partnership, should be and remain solely in Burgess, Lang, and Palmer.

By paragraph 11 provision was made for the drawing of money from the funds of the partnership by the parties. Williams was to receive interest quarterly at the rate of 10 per cent. a year on the sum contributed by him; Burgess, Lang, and Palmer were each to receive 6 per cent. interest quarterly on the sum which each contributed; Burgess and Lang were each to receive monthly a salary at the rate of $12,000 a year, and Palmer at the rate of $7,500 a year, and, after payment of the above sums, the balance of the net earnings was to be divided and withdrawn at the end of each year as follows: Burgess, $120/415$; Lang, $145/415$; Palmer, $50/415$; and Williams, $100/415$.

By paragraph 12, upon dissolution, the assets were to be distributed as follows: Williams was first to be paid the sum contributed by him; then Burgess, Lang, and Palmer were entitled to receive pro-

portionately the sums contributed by them. Any surplus was to be divided in the proportions above provided for the division of the net earnings.

By paragraph 13, in case of the death of any of the members, the survivors were to have the right to continue the use of the firm name of Burgess, Lang & Co. until the winding up of the business as hereinafter provided.

By paragraph 14, if a partner died before April 2, 1922, the surviving partners had the right to continue the partnership until April 2, 1924 (when it would terminate, even if no notice was given under paragraph 4), and the sum contributed by the deceased was to be left in the firm; one-third of said sum, however, was to be paid to his estate within a year after death, the other third within two years, and the final third within three years. The estate of the deceased was to be entitled to receive interest and the proportion of the earnings as above set forth on any portion of the sum remaining in the partnership and contributed by such partner. In case a partner died on or after April 2, 1922, the surviving partners had the right to continue the partnership for two years *after his death,* and retain the sum contributed by him or pay his estate from time to time any portion or the whole. The deceased's estate was entitled to receive interest and a share in the earnings as above set forth on such portion as remained in the partnership. In case the partnership was continued after April 2, 1924, there were similar provisions for continuing and terminating the partnership if a partner died after April 2, 1924.

By paragraph 14, in case Burgess or Lang died, the survivor, and at his death the representative of the survivor, was entitled to the entire credit of $100,000 for the good will, and to receive the share of the net earnings allotted to such good will, and was to become the owner of the good will, with the sole right to use the partnership name.

By the 16th paragraph, at dissolution, the good will and right to use the name of Burgess, Lang & Co. was to go to Burgess and Lang, or the survivor or representative of the survivor, forever.

The master further found that by December, 1919, Burgess, Palmer, and Lang had contributed the amounts called for by the agreement, and Williams had contributed $74,734.34 of his amount; that between April 2, 1919, and December 31, 1921, Williams received interest quarterly at the agreed rate of 10 per cent. on his contribution, either in cash or by credits, the last payment in cash being in April, 1921, for $1,868.35; that, during the years 1919, 1920, and 1921 there was only one distribution of profits, and the sum credited to Williams was $7,920.61, which was paid in certificates of stock of the Springfield Warehouse Trust; that on December 31, 1921, there was due Williams from Burgess, Lang & Co. $117,322.67, which included the $74,734.34 capital above spoken of; that after April 2, 1919, Williams' name did not appear on any stationery or in any advertisement as a general or special partner, but did appear in the Boston Stock Exchange directory as a special partner in 1921; that there was no evidence that he did anything in connection with the conduct of the business; that there was no evidence that he received financial state-

ments of the company after the fall of 1919, or that he knew of its financial affairs or difficulties until the fall of 1921, when he was asked to contribute more money to prevent the company from going on the rocks, which he refused to do.

The master further found that Williams had never held himself out as a general partner of Burgess, Lang & Co., either to creditors or other persons, and that there was no evidence presented before him of the filing and publishing of the certificate required by Massachusetts General Laws, c. 109, §§ 4 and 5, relating to limited partnerships.

Counsel for petitioner in this proceeding contend that, inasmuch as Williams filed an answer to the involuntary petition denying the alleged acts of bankruptcy, insolvency, partnership, etc., and claimed a jury trial, the court below erred in sending the question of partnership to a master to find and report the facts and in entering an order or decree based thereon; that the question whether Williams was a partner was necessarily involved in the question of his alleged insolvency, and, being given the right to a jury trial by section 19a of the Bankruptcy Act (Comp. St. § 9603 [a]) upon the question of insolvency and the acts of bankruptcy, he was also entitled to have the question of partnership, which he claims was necessarily involved therein, determined by a jury.

[2] If the question of Williams' membership is necessarily involved in the question of the firm's insolvency, the determination of which would be material in deciding whether the firm should or should not be adjudged a bankrupt, we do not find it necessary now to pass upon that question, as the proceeding has not reached the stage of adjudication. The Bankruptcy Act (Comp. St. §§ 9585–9656) contemplates and provides for the taking of certain steps prior to adjudication, one of which is the sequestration of the estate of the alleged bankrupts, and another the submission of an offer of composition, and it cannot be doubted that the bankruptcy court, where composition is offered by some members of an alleged firm before adjudication, or sequestration of the property of any one of the alleged partners is asked for whose membership is denied, has power to direct a preliminary inquiry into the membership of such alleged partner, for the purpose of aiding the creditors and itself in determining whether an offer of composition should be accepted and approved, or the sequestration of the estate of such member should be had. Whether the affirmative answer given to the question in this case amounts to anything more than the ascertainment of the existence or nonexistence of probable cause for the taking of either of these preliminary steps (composition or sequestration) we need not inquire. The ascertainment of the fact in the manner and for the purpose it was desired to be used here was undoubtedly proper.

[3] This being a petition to revise, the question presented is whether the District Court, on the facts reported by the master, erred in its ruling or order that Williams was a partner. If Williams, under the terms of the agreement of April 2, 1919, was a partner, his failure to file the certificate required by Massachusetts General Laws, c. 109,

§§ 4 and 5, relating to limited partnerships made him liable as a general partner; but if, under the terms of that agreement, he was not a partner, but stood to the firm in the relation of a creditor, the provisions of sections 4 and 5 of said chapter 109 would be without application. Pierce v. Bryant, 5 Allen (Mass.) 91, 93, 94. In that case it was said that:

"The intent of the statute is to relax this rule [the rule of the common law making partners liable in solido for firm debts] only on certain conditions, and within fixed and prescribed limitations. If these are not fulfilled, or are disregarded, then the statute applies rigorously the rule of the common law, by subjecting all the members of the firm indiscriminately to the liabilities of general partners."

[4] It appears from the findings of the master as above set out that on April 2, 1919, the alleged bankrupts entered into a written agreement as to the conduct of a brokerage business which states their true relationship to that business, their respective rights in the control and management of the business, their interests, if any, in its assets, its period of duration, the right of withdrawal on the part of Williams, the right to continue the business in case of the death of a member and its duration in such case, the liquidation of the contribution of Williams in case of his withdrawal, and the distribution of the funds of the partnership upon dissolution. There is no finding that any party to the agreement has ever held himself out in any manner or done any acts inconsistent with the relationship and rights of the respective parties under the written agreement. The relationship, therefore, of Williams to the other parties to the contract, and his rights thereunder, are to be ascertained from the terms of the contract itself. This calls for a construction of the instrument, and while it involves the ascertainment of a fact, being a question of construction, it is a question for the court.

[5] The question is, not what the parties may have erroneously understood their rights and obligations were, but what they actually were as defined and provided for in the contract.

[6] It has been said, and no doubt wisely, that it is not prudent to define a partnership; but there are certain things generally recognized as essential which may be stated, and they are probably nowhere better stated than by Judge Cooley in Beecher v. Bush, 45 Mich. 188, 200, 7 N. W. 795, 799 (40 Am. Rep. 465), where, after reviewing the cases generally, he says:

"Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract, and with intent he has formed a relation in which the elements of partnership are to be found. And what are these? At the very least the following: Community of interest in some lawful commerce or business, for the conduct of which the parties eventually are principals of and agents for each other, with general powers within the scope of the business, which powers however by agreement between the parties themselves may be restricted at option, to the extent even of making one the sole agent of the others and of the business."

[7] We do not think the contract of April 2 discloses the existence of these elements. Williams certainly had no right to represent the firm of Burgess, Lang & Co., nor any of the other persons who were

confessedly members of that firm, for the contract expressly provided that he should have no authority to sign checks or notes in behalf of the partnership, or to execute contracts or other written instruments, or to use the firm's name or otherwise act for said partnership, and he never undertook to do so. It is true that he had the right to look at the books of the concern if he saw fit; but if he concluded that the business was being improperly managed, or its funds wasted, he had no right to prevent such things from being done or to require a dissolution, and the granting of the right to look at the firm's books was as consistent with his being a creditor as a partner. The entire control and management of the business was expressly given to Burgess, Lang, and Palmer. They *alone* had the right and power to act for the partnership, to sign checks, notes, contracts, etc., and to use the firm name, and their decision, or the decision of any two of them, was made binding in all matters relating to the business.

Furthermore it appears that the title and entire legal and equitable ownership in all the property and assets of every kind belonging to the partnership was to be and remain solely in Burgess, Lang, and Palmer. As Williams had no title, legal or equitable, in any of the assets of the business, he had none in the capital employed in the conduct of the business or in the earnings or profits as they accrued, and the essential elements or evidenciary facts, from which a community of interest as between him and the three acknowledged partners of the firm could be found, do not exist. While Burgess, Lang, and Palmer, in the conduct of the firm's business, each acted as principal and as agent for one another, neither of them could be found to have acted as agent for Williams, for he had no community of interest in the business of the firm upon which such agency could be predicated. Although the contract speaks of a part of the return or compensation which Williams was to receive for the contribution or loan made by him to the firm as net earnings, that term was not employed to designate net earnings or profits as such, and in which he had title and community of interest, for the contract expressly vested title to all the assets, of whatever nature, in Burgess, Lang, and Palmer.

Williams was given the right to terminate his relationship under the contract, whatever it was, April 2 of any year on or after the year 1921, on giving one year's notice, and this notwithstanding that, by the express provision of the contract, the partnership, which it purported to create and define, was to continue until the 2d day of April, 1924, and thereafter until the 2d day of April, 1929, unless notice to the contrary in writing was given "by one of the partners at least 6 months before April 2, 1924." The phrase "one of the partners," as used in paragraph 4 of the contract, clearly was not intended to include Williams, for, in paragraph 3, Williams' rights were expressly defined and, as defined, did not give him a right to terminate the partnership, but simply to withdraw his money. The same is true of the phrase "surviving partners," as used in paragraphs 13 and 14.

Then, again, upon dissolution of the partnership, the distribution of the assets, which was to take place as between Williams and the other parties to the contract, was not on the basis of the proportion which

each had contributed to the business; but Williams was to be paid first what he had contributed, and thereafter the other parties were to receive proportionately what they had contributed, if the funds were insufficient to pay them in full. As respects creditors other than himself, Williams' right to payment of his advancements was deferred, but he was none the less a creditor. The fact that he was erroneously called a partner did not, of itself, make him one.

On the question of what elements are necessary to constitute one a partner, see Rosenblum v. Springfield Produce Brokerage Co., 243 Mass. 111, 137 N. E. 357; Ross v. Burrage, 233 Mass. 439, 124 N. E. 267; Denny v. Cabot, 6 Metc. (Mass.) 82; Partridge v. Kingman, 130 Mass. 476; Brotherton v. Gilchrist, 144 Mich. 274, 107 N. W. 890, 15 Am. St. Rep. 397; London Assurance Co. v. Drennen, 116 U. S. 461, 6 Sup. Ct. 442, 29 L. Ed. 688; De Rees v. Costaguta (C. C. A.) 275 Fed. 172; Marcuse & Co. (C. C. A.) 281 Fed. 928; same case under name of Giles et al. v. Vette et al., 44 Sup. Ct. 157, 68 L. Ed. ——, decided January 7, 1924; Eastman v. Clark, 53 N. H. 276, 296, 297, 16 Am. Rep. 192.

In No. 1678, the order or decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the petitioner.

In No. 1695, the appeal is dismissed, with costs to the appellees.