**SUGG et al. v. HOPKINS, Collector of Internal Revenue.**

(Circuit Court of Appeals, Fifth Circuit. February 3, 1926.)

No. 4586.

1. **Partnership ⬤⟹20—Association in business between persons, one of whom is sole owner of property and of increase or undivided profits, is not partnership.**

There is no partnership between persons associated in business, where one of them is sole owner of property or capital employed therein, and of increase and undivided profits.

2. **Partnership ⬤⟹5.**

One is not a partner who has no proprietary interest in profits as profits.

3. **Internal revenue ⬤⟹7—Business association between persons, one of whom furnished all capital, retaining title to property and profits until divided, held not "partnership," within Income Tax Law (War Revenue Act Oct. 3, 1917, § 201 [Comp. St. 1918, § 6336⅜b]).**

Business association between two persons, one of whom furnished capital for purchase of sheep and supplies and retained title thereto, and the other of whom received monthly wage for care of sheep and share in profits, title to all profits remaining in person furnishing capital until divided, *held* not "partnership," within meaning of War Revenue. Act Oct. 3, 1917, § 201 (Comp. St. 1918, § 6336⅜b), levying tax on income of partnership.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

4. **Internal revenue ⬤⟹7.**

"Partnership," as used in War Revenue Act Oct. 3, 1917, § 201 (Comp. St. 1918, § 6336⅜b), levying income tax on partnerships, refers only to ordinary partnerships.

5. **Statutes ⬤⟹245.**

Taxing statutes are not to be extended by implication beyond clear import of language used, and doubt must be resolved against government.

In Error to the District Court of the United States for the Northern District of Texas; Wm. H. Atwell, Judge.

Action by J. D. Sugg and another against George C. Hopkins, collector of internal revenue for the Northern district of Texas. Judgment for defendant, and plaintiffs bring error. Reversed and rendered.

H. E. Jackson, of San Angelo, Tex., and T. W. Gregory, of Houston, Tex. (Collins & Jackson, of San Angelo, Tex., on the brief), for plaintiffs in error.

Henry Zweifel, U. S. Atty., and N. A. Dodge, Sp. Asst. U. S. Atty., both of Fort Worth, Tex. (Morrow H. Boynton, Asst. U. S. Atty., of Ballinger, Tex., and A. W. Gregg, Sol. of Internal Revenue, and Floyd F. Toomey, Sp. Atty., Internal Revenue, both of Washington, D. C., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the plaintiffs in error, J. D. Sugg and R. C. Ferguson (herein called plaintiffs), to recover the amount of tax, penalties, and interest paid by them under protest on October 23, 1923, with interest on that amount. That amount was exacted under the excess profits tax provision of the War Revenue Act of 1917 (section 201, 40 Stat. 303 [Comp. St. 1918, § 6336⅜b]), levying such tax "upon the income of every corporation, partnership or individual," and was assessed against plaintiffs as copartners, on the theory that income realized in the year 1917 in a business transaction in which plaintiffs were associated as hereinafter stated was income of a partnership composed of the plaintiffs. A jury was waived, and the case was tried on an agreed statement of facts; the right to object to the competency or relevancy of some facts agreed on being reserved.

It was admitted that the tax, interest, and penalties paid by plaintiffs under protest amounted in all to $35,679.90, that plaintiffs made proper claims for abatement and refund, that they did all that was required to entitle them to present by suit the claim asserted, that the decision of the case turns on the question whether the tax was properly assessable against and collectible from the plaintiffs, and that the ruling of the trial court on that question was duly invoked and presented for review. The pertinent facts may be stated as follows:

For some time prior to November 15, 1913, said Ferguson and one McKensie were engaged as partners in the live stock business, having a small flock of sheep on a ranch owned by Sugg. Shortly prior to that date Ferguson suggested to Sugg that the former's firm of Ferguson & McKenzie had become heavily involved financially, and they were not in a position to take care of the sheep they had, and proposed to Sugg that he purchase

the Ferguson & McKenzie sheep, and additional sheep to the number of 10,000, and let him (Ferguson) handle the whole flock for their mutual profit, benefit, and account. In response to that suggestion Sugg expressed a willingness to join Ferguson in the suggested undertaking, but on the conditions that he could do so without involving himself in any sort of partnership deal, that the adventure should be limited and restricted to the acquisition by him and the handling by Ferguson of the single bunch of 10,000 sheep, and that he should have the sole and exclusive ownership thereof, with authority to direct the way, manner, times, and terms of sale, Ferguson to be paid a small monthly salary and one-half the profits for his services. The written contract referred to below was then prepared by a lawyer, who was informed of the above-mentioned conditions imposed by Sugg, and who advised Sugg that the contract as prepared and signed did not create a partnership relation. At that time Ferguson was heavily in debt and was being pressed by his creditors. Sugg was a man of considerable means, engaged in the ranch business on a large scale, and in the cotton mill and banking business.

The contract mentioned, in which Sugg was called first party and Ferguson second party, was signed by them and dated November 15, 1913. Paragraphs 1 to 6 provided to the following effect: Sugg agreed to advance about $40,000 for buying not to exceed 10,000 sheep, to be placed on a named ranch owned by him, none of that amount, or any other amount advanced, to be used for any other purpose than for payment for the sheep and actual and necessary expenses incurred in handling them, including transportation, wages of herders, supplies, etc.; Sugg's disbursement to be made through his agent, C. C. Kirkpatrick, and all disbursements to be made subject to Sugg's approval. Ferguson agreed to buy the sheep, and to devote all his time, or so much thereof as might be necessary, to the purchase, handling, grazing; marketing, etc., of such sheep and wool therefrom. The following are the remaining provisions of that contract:

"VII. That said sheep when purchased and all increase thereof, and the wool, shall be and become and remain the sole and absolute property of first party, and when the same or any part thereof or the wool is sold, the proceeds shall be placed with the San Angelo Bank & Trust Company to the credit of said first party, provided that the party selling same shall give the data pertaining thereto to the said C. C. Kirkpatrick, who shall make the proper entries thereof on the books to be kept by him.

"VIII. That when said sheep, together with their increase, if any, and the wool taken therefrom, if any, and the properties, such as horses, wagons, etc., if any, purchased and used in the herding of said sheep, are sold, first party shall pay to second party one-half of the proceeds derived from such aggregate sales after first deducting and paying to himself the following amounts namely:

"First. The aggregate of all moneys advanced by first party to pay the purchase price of said sheep and properties, if any, for expenses and for all other purposes incident to the handling, grazing, shearing, buying, and selling of same, together with interest thereon from the date of each respective advancement, as shown by the books of C. C. Kirkpatrick or his substitute trustee, until it is paid, at the rate of 8 per cent. per annum.

"Second. Five cents per head per month for grown sheep, and five cents per head per month for lambs, if any, after November 1st each year.

"Third. All taxes of every kind, if any, paid on said sheep and properties.

"Fourth. All other amounts, if any, that may be due first party by second party, or either of them, whether same arose from handling said sheep or otherwise.

"After first party has deducted from the total proceeds of the sale of said properties all of the amounts above mentioned, he shall then pay to second party, or his assigns, at San Angelo, Texas, one-half the remaining amount.

"IX. That said party of the second part will, when said sheep are bought, wool brand the same, and their increase thereof, thus: * * *

"X. That, before a contract for the purchase of said sheep is consummated, said first party shall, where it is practicable, be advised of the price to be paid therefor, and he shall finally approve the same. After the same are bought they shall be kept and maintained by second party, and be sold when, in the judgment of all parties hereto, the market and condition of the sheep justify; the wool likewise, but the right is reserved in first party to sell the said sheep or the wool at any time after December 15, 1916, when this contract shall be at an end, unless renewed and extended on that date. An inventory and appraisement of all property shall be made, and the said Kirkpatrick shall furnish a statement of all advancements and disbursements, and from that a settlement shall be had. If the appraisement cannot be agreed upon, it shall

be left to a board of arbitration, first party to select a disinterested sheep man, second party a disinterested sheep man, and the two selected to select the third disinterested sheep man, and their findings shall be final as to the value of the sheep, wool, and properties on hand. If their appraisement exceeds the aggregate of the advancements, expenses, interest, taxes, etc., as above set out, said sheep, wool, and property shall be sold upon the market, or first party shall pay one-half of the profit to second party, and keep the properties, or second party shall have the right to pay the aggregate appraisement, less one-half of the appraisement of the profits, if any, to the first party. If this contract is extended, an inventory of the property shall be made at that time and filed with C. C. Kirkpatrick.

"XI. That, as stated, all sheep, the increase thereof, the wool thereon, and also all horses, wagons, and other properties, real, personal, and mixed, if any, which may be purchased to carry on said sheep business, as herein outlined, shall be and become, upon acquisition, the fee simple and absolute property of first party (and the amount of one-half of the profits, if any, estimated and arrived at, as hereinabove set out, shall be and become a new obligation on the first party to repay to second party, who shall not at any time have or hold any interest in or title to said sheep, wool, or properties).

"XII. It is further understood and agreed by the parties hereto that the second party receives as a monthly salary or advancement the sum of one hundred and no/100 ($100.-00) dollars, but should it develop, when said sheep, wool, and properties are sold, or at the end of this contract, on December 15, 1916, that there has been any loss sustained, then second party shall pay to first party, at San Angelo, Texas, one-half of the amount of said loss, with 8 per cent. interest from December 15, 1913.

"XIII. Neither party shall have the right to bind the other by contract or otherwise, except as herein specifically provided, and no contract made by either party hereto pertaining to said sheep, or the handling thereof, shall be binding upon the other until submitted to and approved by such other party, except as to the sale by first party, as herein otherwise provided."

The transaction provided for in that contract was carried out according to its terms. No property, other than the single flock of 10,000 sheep, and equipment and supplies for handling them, was acquired or handled by plaintiffs. No deal or financial transaction was undertaken or carried on by Ferguson until he had secured the approval of either Sugg or his agent, Kirkpatrick. Because of the coming on of the war and favorable conditions for the sheep business, the parties concluded that it would be for their best interest that no final disposition be made of the sheep until the year 1917. In the latter part of that year all the sheep were sold, the parties sharing in the net profits according to the terms of the above-mentioned written agreement, that profit being the subject of the tax assessed and sought to be recovered. Both Sugg and Ferguson, in making their individual income tax returns for 1917, listed the profits made by each from the above-mentioned business transaction.

[1–3] The plaintiffs not having had the intention to become partners, the partnership relation did not exist between them, unless the express or implied agreement governing their relations in the transaction in which they were associated had the legal effect of making them partners. We shall not attempt to define a partnership, or to enumerate the elements essential to the existence of that relationship. It is enough to determine whether the relation between the plaintiffs did or did not have one authoritatively recognized requisite of a partnership. Though, under the arrangement between plaintiffs, one of them contributed property and the other services to carry on a joint business for their common benefit, and Ferguson was to pay to Sugg one-half of the amount of any loss sustained, and was to be paid by Sugg one-half of the amount of any net profit realized, they were not partners, if Ferguson was not a part owner of the sheep or their increase, or the profits therefrom as they accrued. There is no partnership between persons associated in business, where one of them is the sole owner of the property or capital employed therein, and of the increase or profits as they accrue, and so long as they are undivided. One is not a partner who has no proprietary interest in profits as profits. Meehan v. Valentine, 12 S. Ct. 972, 145 U. S. 611, 36 L. Ed. 835; Freeman v. Huttig Sash & Door Co., 153 S. W. 122, 105 Tex. 560, Ann. Cas. 1916E, 446; Buzard v. Bank of Greenville, 2 S. W. 54, 67 Tex. 83, 60 Am. Rep. 7; Fink v. Brown (Tex. Com. App.) 215 S. W. 846; Rosenblum v. Springfield Produce Brokerage Co., 137 N. E. 357, 243 Mass. 111; Petition of Williams (C. C. A.) 297 F. 696; 20 R. C. L. 828, 834.

The above-mentioned contract was explicit in its provisions to the effect that Sugg was to be the sole owner of the sheep and their

increase, the wool taken therefrom, and all other property bought, acquired, or used in the transaction, and that his obligation with reference to profits was to pay to Ferguson one-half the amount thereof, after they had accrued and had been ascertained in the way prescribed. The terms of the contract negative the existence of any right in Ferguson to a proprietary interest in the sheep or their increase, or in profits as they accrued. The result to him of the realization of net profits was to make him the beneficiary of the personal obligation of Sugg to pay to him one-half of the amount thereof. At no time was Ferguson the owner of a share or interest in the property dealt with. The relationship created was not made a partnership as a result of the fact that, in the event of a realization of net profits, Ferguson was to get additional compensation for his services measured by the amount of such profits. We conclude that, though the plaintiffs carried on a joint business for their common benefit, one contributing the capital or assets employed, and the other his services, they were not partners, because one of them was and remained the sole owner of the assets, including profits as they accrued, and the other did not own a share in the assets used in the venture, or in the increase or profits as they accrued.

[4, 5] The above-quoted statute, which must be relied on to sustain the exaction in question, subjected to the prescribed tax the income of individuals, and, if individuals were associated in business, also the income of the association itself, if the association was a corporation or a partnership. The term "partnership," as used in that provision, refers only to ordinary partnerships. Burk-Waggoner Oil Association v. Hopkins, 46 S. Ct. 48, 70 L. Ed. —— (Oct. Term, 1925). Taxing statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer. United States v. Merriam, 44 S. Ct. 69, 263 U. S. 179, 68 L. Ed. 240, 29 A. L. R. 1547. We conclude that the plaintiffs were not liable for the tax paid by them under protest as above stated, because their business association was not a partnership within the meaning of the quoted statute.

The judgment is reversed, and it is ordered that judgment be here rendered in favor of plaintiffs in error for the sum of $35,679.63, with interest thereon from October 23, 1923, at the rate of 6 per centum per annum, and for all costs.

Reversed.